*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0372p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

Nos. 06-5854/5855

CHAD MICHAEL HEARN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
Nos. 05-10009; 05-10088—James D. Todd, Chief District Judge.

Argued: July 17, 2007

Decided and Filed: September 11, 2007

Before: BOGGS, Chief Judge; CLAY and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Daniel J. Taylor, SPRAGINS, BARNETT & COBB, Jackson, Tennessee, for Appellant. Kevin G. Ritz, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Daniel J. Taylor, SPRAGINS, BARNETT & COBB, Jackson, Tennessee, for Appellant. Kevin G. Ritz, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

ROGERS, Circuit Judge. Can the government, for the purpose of establishing the heart of the government's case, repeatedly solicit testimony regarding confidential informants' statements to the effect that a defendant had the intent to distribute illegal drugs, when the defendant does not have an opportunity to cross-examine the informants and when the government is on notice of a potential Sixth Amendment problem? That question is central to Chad M. Hearn's challenge to his convictions. Because the government relied extensively on confidential-informant statements to prove key elements of its case without providing Hearn an opportunity to cross-examine those informants, the admission of the confidential informants' statements violated Hearn's right to confront witnesses against him.

In early 2004, Jackson-Madison County authorities learned from confidential informants that Hearn possessed large amounts of illegal drugs that he intended to sell at an upcoming rave party in Nashville, Tennessee. The police conducted surveillance and, on March 18, 2004, officers

1

followed Hearn's vehicle and attempted to stop it. At that point, an unidentified white object, which appeared to be the top of a pill bottle, hit the top of the police car's windshield. After a police officer stopped Hearn's vehicle, the officer detained and subsequently arrested Hearn, who consented to a search of the car. The search revealed a semiautomatic weapon on the front seat of the car and, in the back of the car, a guitar case containing documents belonging to Hearn, some marijuana, and three pill bottles that contained a total of 303 pills, some of which tested positive for being ecstasy. (Hearn and a passenger were the only two occupants in the car at the time.) Authorities then obtained and executed a search warrant for Hearn's home, where authorities found sixteen rounds of semiautomatic ammunition for use in a gun identical to the gun that authorities previously found in Hearn's car.

The government obtained a grand jury indictment (and later convictions) for one count of possession of a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1); and one count of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1). Prior to the start of the trial, defense counsel filed a motion to exclude statements by confidential informants because the introduction of the informants' statements would violate Hearn's constitutional right to confront witnesses against him. *See generally United States v. Pugh*, 405 F.3d 390 (6th Cir. 2005); *Crawford v. Washington*, 541 U.S. 36 (2004). The government repeatedly assured the district court that it did not intend to offer any part of the informants' statements to prove the elements of the crimes. (*E.g.*, "We don't intend to put on any specific proof as far as a rave party that may have existed in Nashville."). Instead, the government intended to use the informants' statements to show why authorities initiated the stop that led to the discovery of contraband. ("[T]here may be some questions [from] the jury as to why [authorities] continued to surveil this individual . . . and then did not stop the defendant until he was on the interstate in that direction. Of course, the explanation for that . . . is because the information they had received was that he would be headed towards Nashville to a rave party, and that's the reason that they stopped him at that point."). The district court said that it would "allow the government to offer this testimony from a confidential informant for the limited purpose of showing why the officers were conducting surveillance on the defendant in the first place."

The government's conduct at trial, however, belied the stated reason given by the prosecution for offering the evidence, namely to explain why the government commenced the investigation. Specifically, instead of providing a limited explanation for why the officers stopped Hearn, two witnesses provided more expansive explanations, which implicated Hearn in a manner unlike that of any other evidence. Over defense counsel's objections, one officer testified that he stopped Hearn because he learned from a confidential informant "that Mr. Hearn had large amounts of ecstasy and marijuana [and] was going to be leaving to take the narcotics to a rave party in Nashville."[1] The second officer, again over defense counsel's objections, testified that he investigated Hearn because an informant stated that "Mr. Chad Hearn was in possession of large quantities of MDMA pills and marijuana that he intended to sell at a rave party in Nashville, Tennessee, on the upcoming

---

[1] The district court did instruct the jury just prior to the officer's testimony:

> Ladies and gentlemen, this question [that the government posed to the testifying police officer] has to do with what . . . this man [was] told by a confidential informant. What the confidential informant told this witness is not being admitted to prove that what the confidential informant said was true. That's inadmissible. This evidence is being admitted solely for the limited purpose of explaining why this officer did what he did next. So you will not accept the testimony as being offered to prove what the confidential informant told him was true, but merely to explain why this officer did what he did next. So for that limited purpose, I'm going to let this witness answer that question.

The court, however, did not warn the government to limit the scope of testimony regarding the informant's statements.

weekend."[2]  Having mentioned that the informant told authorities of Hearn's intent to distribute, the second police officer also added, "We received additional information from a reliable confidential informant that Mr. Hearn had removed all or part of the narcotics in question from the residence and placed them in his vehicle."  Thus, through the two police officers testifying under the guise of providing a limited explanation for why officers stopped Hearn's car, the government was able to establish that informants had told police that Hearn intended to sell the drugs and personally moved the drugs from his residence to his car.

Before analyzing whether Hearn suffered a constitutional violation when prosecutors solicited testimony regarding the confidential-informant statements that Hearn transported and intended to sell illegal drugs, we must first dispose of Hearn's sufficiency-of-the-evidence challenge.  An appellate court hearing claims of both evidence insufficiency and procedural errors must determine the evidence-insufficiency issue regardless of how it resolves the procedural claims, because a holding of insufficient evidence would generally preclude retrial.  *See Patterson v. Haskins*, 470 F.3d 645, 651 (6th Cir. 2006).  Hearn's evidence-insufficiency argument lacks merit because, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found that the government proved the essential elements of the crimes beyond a reasonable doubt.  *See United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997) (standard of review).

In essence, Hearn argues that the government did not prove that the drugs and gun belonged to him instead of his roommate and that Hearn's mere constructive possession of the illegal objects was not sufficient.  The evidence, however, was sufficient to show that Hearn actually possessed both the drugs and the gun at issue in this case.  Police found a large amount of illegal drugs in the trunk of a car that Hearn usually drove and a loaded firearm in the middle of the front seat, immediately beside Hearn.  Authorities also found ammunition matching the gun in Hearn's bedroom closet, and Hearn's passenger testified that the drugs and gun did not belong to him.  In addition, authorities found over 300 tablets of illegal drugs, and a jury could rationally conclude that someone carrying that amount of drugs intended to traffic them.  And while additional investigation might help prove that the drugs and weapon did not belong to Hearn's roommate, the evidence in Hearn's case was sufficient because the prosecutor did not need to disprove the roommate's involvement. *See United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004).  Finally, constructive possession is sufficient to sustain a conviction.  *See United States v. Frederick*, 406 F.3d 754, 764–65 (6th Cir. 2005).[3]

Having found that there was sufficient evidence to sustain Hearn's conviction, we turn to Hearn's claim that he suffered a constitutional violation when he did not have an opportunity to

---

[2]Before the second officer testified, the district court again instructed the jury:

> Ladies and gentlemen, let me give you the same cautionary instruction that I gave you earlier.  This witness apparently is about to testify about what some confidential informant told him or other officers in his unit.  Please understand that this information is not admissible to prove that what the confidential informant said was true, but merely to explain why this officer did what he did next.  It's admitted for that purpose.

The district court did not comment on the fact that the officer testified that the informant told authorities about Hearn's intent to distribute an illegal substance.

[3]We also reject Hearn's argument that the police illegally stopped his car.  In this case, authorities stopped Hearn's car after a confidential informant provided the color of Hearn's vehicle, its location, and a description of where it would be traveling.  As discussed above, authorities also had a confidential informant's statement that Hearn took illegal drugs from his apartment, put them in his car, and would be driving to Nashville to sell them at a "rave" party.  This specific information about Hearn's car and his conduct gave the police reasonable suspicion to stop Hearn's car.

cross-examine the confidential informants. That claim has merit. The government's conduct in this case makes clear that it introduced the confidential informants' statements, at least in part, to establish possession with intent to distribute and firearms-possession in furtherance of drug trafficking. In its closing argument, for example, the government relied on the informants' statements when it argued, "You [the jury] heard evidence from an officer that testified, 'We got calls from more than one informant saying that Mr. Hearn was going to a rave party, and [that] he was going to take these [illegal] pills with him.' And officers conducted surveillance because of that information that was coming into their office."[4] Similarly, the manner in which the government questioned its witnesses suggests that it did not ask about the confidential informants' statements for very limited purposes. Indeed, after pre-trial motions put the government on notice of a potential Sixth Amendment problem, counsel for the government asked broad, open-ended questions, such as "[W]hy did you begin an investigation into Mr. Chad Hearn?", instead of attempting to make sure, through narrow questioning or otherwise, that the officers did not testify as to the details of the confidential informants' allegations. That the officers had reports from confidential informants of "some illegal activity," for example, would have sufficed for the asserted reasons of the prosecutors. The open-ended question benefitted the government because it allowed the jury to hear the police officers testify that confidential informants said that Hearn transported the illegal drugs and intended to sell them.

We emphasize that this is not a case where prosecutors, hoping to limit jury concerns about the reasons for police actions, took reasonable, or even minimal, steps to limit testimony about how officers stopped a suspect in response to statements from confidential informants. Nor is this a case where witnesses blurted out more testimony than prosecutors expected. The excessive detail occurred twice, was apparently anticipated, and was explicitly relied upon by the prosecutor in closing arguments.

Admission of the confidential-informant statements, therefore, violated Hearn's right to confront witnesses against him. The Sixth Amendment protects a defendant's right to confront witnesses. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). In *United States v. Cromer*, this court held that a defendant suffered a Sixth Amendment confrontation violation "[b]ecause there was a testimonial, out-of-court statement [from a confidential informant], offered to establish the truth of the matter asserted, and [the defendant] was provided no opportunity to cross-examine the [confidential informant]." 389 F.3d 662, 677–78 (6th Cir. 2004). The same occurred here; Hearn did not have an opportunity to cross-examine the confidential informants who, through the police officers, were able to accuse Hearn of intending to traffic drugs. In *United States v. Pugh*, moreover, this court held that prosecutors violated a defendant's Sixth Amendment rights because there was no conceivable reason (besides offering testimonial, out-of-court statements about a defendant's guilt) for admitting a positive identification of a defendant. 405 F.3d at 400. In this case, similarly, there was no conceivable reason, besides implicating Hearn, for the officers to testify that a

---

[4] Again, the district court instructed the jury:

Ladies and gentlemen, there's been mention of these confidential informants, or this confidential informant. You'll remember that yesterday when this testimony was admitted, I instructed you that the information these confidential informants provided was not admissible as proof of a crime. It was only admitted for the limited purpose of explaining why the officers did what they did. Let me remind you of that cautionary instruction, that this testimony about confidential informants is not admissible as evidence of a crime. It's only admissible to explain why the officers did what they did. And it's only for that limited purpose that I let it in, and it's only for that limited purpose that you'll consider it.

The court, however, did not instruct the jury to disregard the comment about Hearn's intent.

confidential informant told them that Hearn placed the drugs in his car and was driving to Nashville to sell them.

Moreover, this is not a case in which prosecutors admitted confidential informants' statements only to provide general background. In *United States v. Savoires* this court, while recognizing that prosecutors can use confidential informant statements "if offered solely as background and not as substantive proof," rejected the prosecutor's contention that the use was so limited in that case. 430 F.3d 376, 382 (6th Cir. 2005). We relied on the fact that the prosecutor, while arguing that drugs found on Savoires were intended for distribution, also reminded the jury in closing argument of the officer's testimony that "he obtained a search warrant based upon information from [a source of information] who had made a purchase from that location several days prior." *Id.* The prosecutor in this case, similarly, relied on the confidential-informant statement in closing argument. In contrast, this court in *United States v. Martin*, albeit not in the context of a constitutional claim, held that the admission of a "general and rather vague statement" from a confidential informant for the purposes of "setting the scene" did not violate the Federal Rules of Evidence. 897 F.2d 1368, 1372 (6th Cir. 1990). Unlike in *Martin*, this case involves specific accusations against Hearn, and the admitted testimony went beyond "setting the scene." Had jurors heard that authorities followed and pulled over Hearn because of "some illegal activity" instead of hearing that Hearn transported illegal drugs with the intent to sell them, the jurors would have understood why police behaved the way that they did without Hearn's suffering a Sixth Amendment violation. *Cromer*, *Pugh*, and *Savoires* thus demonstrate that Hearn's Sixth Amendment confrontation right was violated.

Because no other evidence so directly demonstrated Hearn's possession of the drugs with intent to sell, the confidential informants' statements went to the heart of the government's case against Hearn and the admission of the evidence was not harmless. To obtain convictions against Hearn, the government needed to establish, beyond a reasonable doubt, that Hearn possessed and intended to distribute illegal drugs and that he possessed a firearm in furtherance of drug trafficking. Hearn countered the government's evidence by introducing testimony that linked the car, gun and guitar case to his roommate. As discussed above, a jury could have concluded, based on the substantial amount of drugs found in the car, that Hearn intended to distribute and traffic in the drugs. However, in light of the evidence introduced by Hearn, a jury might also have reasonably rejected that inference in the absence of the confidential-informant statements. For this reason, we cannot say that there was "no reasonable possibility that the prosecutor's use of the [confidential informants' statements] made a difference to the jury." *Savoires*, 430 F.3d at 382.

Our holding that the admission of the confidential informants' statements was not harmless finds support in this court's precedent. In *Pugh*, for example, this court held that the admission of a confidential informant's statement was not harmless because prosecutors could not provide conclusive eye-witness evidence linking the defendant to the offense. 405 F.3d at 401. Here, the prosecutor provided evidence linking Hearn to the drugs and gun, but Hearn countered that evidence when he introduced testimony linking the car, gun and guitar case to his roommate. As a consequence, the confidential-informant statements implicated Hearn in a manner well beyond any other evidence introduced by the prosecutor, much like the statements at issue in *Pugh*.

This case is also distinguishable from *Savoires*, in which the testifying officer described how an informant told authorities that someone was storing drugs at a particular facility. 430 F.3d at 382. The court held that admission of the informant's statement that drugs existed at the location was harmless both because police officer testimony had also established that fact and because other evidence against the defendant was compelling—the defendant had drugs packaged for distribution in his clothing and admitted, in a written statement, that he was selling cocaine and heroin and had a shotgun with him for protection. *Id.* Here, the evidence against Hearn, independent of the confidential-informant statements, is less compelling. Officers found the drugs and gun in the car

driven by Hearn, not on his person. This is significant in light of the testimony introduced by Hearn linking the car to his roommate. Further, unlike the defendant in *Savoires*, Hearn did not sign a written admission connecting him to the contraband at issue. And while we recognize that the district court repeatedly cautioned the jurors not to rely on the confidential informants' statements, we cannot definitely say that the highly prejudicial statements regarding Hearn's possession and intent to distribute illegal drugs had no impact on the jury's decision. *See Stewart v. Cowan*, 528 F.2d 79, 86 n.4 (6th Cir. 1976).

Because Hearn suffered a constitutional violation when prosecutors repeatedly solicited testimony regarding confidential informants' statements that Hearn possessed and intended to distribute illegal drugs, we reverse Hearn's convictions for possession of a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1).

For the foregoing reasons, we reverse the judgment of the district court in appeal No. 06-5854 and remand for a new trial. In the case on appeal in No. 06-5855, Hearn pleaded guilty to failure to appear for sentencing, in violation of 18 U.S.C. § 3146(a)(1). Hearn makes no independent appellate challenge to that conviction, and we affirm.