**NOT RECOMMENDED FOR FULL-TEXT PUBLICATON**
**File Name: 14a0296n.06**

No. 13-5696

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Apr 21, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| MARIO COMMON, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before:  MOORE and ROGERS, Circuit Judges; and NIXON, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.**  Mario Common appeals from a jury conviction for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He argues that his conviction should be overturned because the evidence against him was "incredible as a matter of law" and was insufficient to support the verdict.  Because we find nothing in the testimony supporting the conviction that was physically impossible or against the laws of nature, we defer to the jury's factual determinations.  Accordingly, we **AFFIRM**.

On April 4, 2012, in the early hours of the morning, four Chattanooga police officers responded to a 911 call for a domestic disorder involving a weapon.  R. 33 (Trial Tr. at 70) (Page ID #130).  The officers were directed to an address on Newton Street, near its intersection with North Orchard Knob.  The officers knew this neighborhood in East Chattanooga as a high-crime

---

[*]The Honorable John T. Nixon, Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

area with significant gun violence. *Id.* at 23 (Page ID #83). Upon arriving at the intersection, they parked their squad cars and proceeded on foot up Newton Street. *Id.* at 17 (Page ID #77).

When they turned onto Newton Street, the officers spotted a man in the middle of the street with what appeared to be a pistol in his hand. He was pointing the pistol at a woman or a small group of individuals. Officer Nelson testified that he saw the silhouette of a pistol and Officers Bramlett and Winbush both recalled that they saw a small silver gun in the man's hand. *Id.* at 19, 45, 71 (Page ID #79, 105, 131). When the woman saw the police arriving, she shouted to tell them that the man had a gun. *Id.* at 44 (Page ID #104). The officers instructed everybody to get on the ground. Instead of immediately complying, the man walked toward the house to the edge of the yard and then tossed the object he was holding. *Id.* at 45, 72 (Page ID #105, 132). He then walked back down the driveway while shouting that he did not have anything, and lay on the ground. He was taken into custody and later was identified as defendant Mario Common.

While one of the officers took Common into custody, the others searched the yard for the object they had seen him toss away. They recovered a small, silver gun in the grass behind the house. The police did not take photographs of the gun before removing it, and the officers' testimony varies regarding the precise location of the gun. Officer Nelson testified that he and Officer Young found the gun "[i]n the back of that residence . . . just at the woodline." *Id.* at 19 (Page ID #79). The distance from the middle of Newton Street, where the officers first observed Common, to the tree line at the back of the property was 156 feet. *Id.* at 68 (Page ID #128). However, Officers Bramlett and Winbush testified that the gun was recovered from the backyard, about ten feet away from the driveway. *Id.* at 47, 72 (Page ID #107, 132). Officer

Winbush testified that when he found the gun, "there was a lot of condensation on the ground, but the weapon didn't appear to have any kind of moisture on it. There were no indentions into the ground where it was, and it didn't look like it had been there any period of time." *Id.* at 73 (Page ID #133).

At trial, Common stipulated that he was a felon and that the handgun recovered from the yard had traveled in interstate commerce. *Id.* at 11, 88 (Page ID #71, 148). Thus, the sole issue for the jury to decide was whether Common had knowingly possessed a firearm. *See* 18 U.S.C. § 922(g); *United States v. Caraway*, 411 F.3d 679, 682 (6th Cir. 2005). After the government rested, Common made a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. R. 33 (Trial Tr. at 89) (Page ID #149). He argued that there were "major inconsistencies" in the testimony of the witnesses and that the 911 caller was not present to testify. *Id.* at 90–93 (Page ID #150–53). The district court denied the motion, explaining that "what struck [him] about the three witnesses' testimony was how consistent it was" and that "any discrepancies . . . in the testimony were easily explained by [the officers'] positional differences in the way they approached the scene." *Id.* at 95 (Page ID #155). Common did not call any witnesses or present any evidence on his own behalf, and he did not renew the Rule 29 motion after declining to put on a case. The jury convicted Common on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). R. 30 (Judgment) (Page ID #53). The district court then sentenced him to 240 months of imprisonment. *Id.* (Page ID

#54). Common filed this timely appeal of his conviction, arguing that the evidence against him was "incredible as a matter of law."[1]

## I. SUFFICIENCY OF THE EVIDENCE

At its core, Common's appeal is a sufficiency-of-the-evidence claim. He contends that the testimony used to support his conviction was incredible as a matter of law, and by extension that there was insufficient evidence to support the jury verdict. When an appellant claims that the evidence produced at trial was insufficient to support a conviction, we must determine whether "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992) (en banc). We may reverse a judgment of conviction only if it was "not supported by substantial and competent evidence upon the record as a whole." *Beddow*, 957 F.2d at 1334 (citations omitted). "It is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Id.* In conducting our review, "we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). Accordingly, the defendant faces a "very heavy burden," *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (citation omitted), to overcome the "strong presumption in favor of sustaining a jury conviction." *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994).

---

[1]Common does not appeal the procedural or substantive reasonableness of his sentence.

Before turning to the merits of Common's claim, we must address whether he has waived his sufficiency of the evidence claim by failing formally to renew it at the close of the defense case. Ordinarily, when "a defendant does not renew his motion for judgment of acquittal for insufficiency of the evidence at the close of all of the proofs, appellate review is limited to determining whether there was a 'manifest miscarriage of justice.'" *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (quoting *United States v. Cannon*, 981 F.2d 785, 789 (5th Cir. 1993)); *see also United States v. Kuehne*, 547 F.3d 667, 696–97 (6th Cir. 2008). However, the waiver rule applies only when the defense presents its own witnesses or other evidence. *See Price,* 134 F.3d at 350 ("[W]hen the defendant moves for judgment of acquittal at the close of the government's case-in-chief, *and defense evidence is thereafter presented* but the defendant fails to renew the motion at the close of all of the evidence, he waives objection to the denial of his earlier motion absent a showing of a manifest miscarriage of justice.") (emphasis added); *United States v. Black*, 525 F.2d 668, 669 (6th Cir. 1975) ("The rule is settled that *when a defendant introduces evidence*, he waives any objection to the denial of his motion to acquit at the close of the government's case."). In *United States v. Kubeck*, 487 F.2d 1256 (6th Cir. 1973), we explained:

> The rationale of [the waiver rule] was that the presentation of a defense served as a withdrawal of the acquittal motion, and therefore, a new motion was required at the close of defendant's case to preserve the evidentiary point as a ground of appeal. In our case, however, [the defendant] offered no evidence after he had rested, and consequently he did not withdraw his original acquittal motion. Thus, [the defendant] is not now barred from raising the sufficiency of the evidence point at this time.

*Id.* at 1258.  Because Common declined to present any evidence after the government rested its case, we apply the ordinary standard of review for a defendant's challenge to the sufficiency of the evidence.

Common argues that the evidence offered against him was insufficient to support his conviction because the testimony of the officers was "incredible as a matter of law."  Our sister circuits have cautioned when reviewing similar claims that "it is not our role, when reviewing the sufficiency of the evidence, to second-guess a jury's credibility determinations."  *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation marks omitted); *see also United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993).  Rather, "attacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence."  *United States v. Farley*, 2 F.3d 645, 652 (6th Cir. 1993).  We may reverse a credibility determination only when it was "'physically impossible for the witness to observe that which he or she claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.'"  *United States v. Davis*, No. 92-1370, 1992 WL 392974, at *1 (6th Cir. Dec. 21, 1992) (quoting *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir. 1989)); *see also Caraway*, 411 F.3d at 682 (noting that "courts need not blindly accept implausible stories swallowed by jurors" if the testimony "defies physical realities") (citation omitted).  Thus, "the test for incredibility of a witness is an extremely stringent one."  *Gadison*, 8 F.3d at 190 (internal quotation marks omitted).

Common argues that the officers' testimony was not credible because it was "impossible under the laws of nature" for one of two reasons: (1) it was physically impossible for Common to have thrown the pistol from the middle of the street to the tree line at the back of the property or (2) it is against the laws of nature that Common could toss the pistol into dewy grass without getting it wet. First, Common claims that it is physically impossible to toss the small handgun underhanded from the middle of Newton Street to the tree line at the back of the property 156 feet away. Even if that is true, Common's argument is without merit because the officers did not testify that they saw Common toss the gun from the middle of the street, and they were not clear about where the gun was found. Instead, they testified that Common walked up to the edge of the yard before he tossed the gun. R. 33 (Trial Tr. at 45, 72) (Page ID #105, 132). Common has not provided any evidence that it would be physically impossible to toss the gun from the edge of the yard to the tree line. Furthermore, Officer Bramlett testified that the gun was recovered only about ten feet away from the driveway. *Id.* at 47 (Page ID #107). To the extent that the officers gave inconsistent testimony regarding the precise location of the gun, we must defer to the jury's credibility determination regarding which testimony to believe. *See United States v. Jefferson*, 149 F.3d 444, 445 (6th Cir. 1998). Accordingly, Common's first argument is without merit.

Second, Common argues that Officer Winbush's testimony was incredible because he asserted that, although "there was a lot of condensation on the ground," the gun was dry when he retrieved it and had not left an indentation in the ground. R. 33 (Trial Tr. at 73) (Page ID #133). There is nothing improbable about this testimony: The gun landed in the grass only a few minutes before it was recovered, and it is entirely possible that water would not have collected

on the gun in that short amount of time. Officer Winbush's testimony about the gun's failure to make an indentation in the ground or to collect condensation supported his inference that it had only recently landed in the location in which it was found. Even if it were extremely unlikely that a gun could have landed in a dewy lawn without accumulating any moisture, the sequence of events described by Officer Winbush is not physically *impossible*. *See Davis*, 1992 WL 392974, at \*2 ("Whether the testimony is implausible or difficult to believe is a question for the jury."). Therefore, Common's second argument is also without merit.

The jury did not have to believe testimony that violated the laws of physics in order to accept the officers' testimony as credible. From the testimony produced at trial, the jury could have rationally concluded that Common was in possession of the gun that the officers found in the yard. Accordingly, the jury's verdict was supported by "substantial and competent evidence." *See Beddow*, 957 F.2d at 1334.

## II. CONFRONTATION CLAUSE

In addition to the claim raised by Common's counsel on appeal, Common submitted a supplemental pro se brief arguing that his Confrontation Clause rights were violated by 1) the playing of two 911 calls at trial and 2) the testimony of officers regarding what the 911 caller had said. Although we ordinarily decline to address pro se arguments when a defendant is represented by counsel on appeal, *see United States v. Morrow*, 497 F. App'x 583, 587 (6th Cir. 2012) (citing *United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011)), whether or not we consider Common's constitutional claims in the instant case makes no difference to the outcome. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

witnesses against him." U.S. Const. amend. VI. Therefore, testimonial hearsay statements are admissible only when the declarant is unavailable to testify and the defendant had an opportunity before trial to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Testimony is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" which may take the form of a formal statement to law-enforcement officers. *Id.* at 51–52 (internal quotation marks omitted). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006) (describing a particular 911 call as a nontestimonial statement made in the face of an ongoing emergency); *see also Michigan v. Bryant*, 131 S. Ct. 1143, 1157–60 (2011); *United States v. Ballew*, 491 F. App'x 589, 591 (6th Cir. 2012).

Common did not object on Confrontation Clause grounds during trial when the government played a tape of the 911 calls for the jury. *See* R. 33 (Trial Tr. at 13–15) (Page ID #73–75). Accordingly, we review this issue for plain error. *United States v. Deitz*, 577 F.3d 672, 683 (6th Cir. 2009). The statements made during the 911 call were not testimonial in nature because they were made to assist the police in responding to a dangerous situation, namely a man in possession of a gun, while the caller faced an ongoing emergency. Therefore, the Confrontation Clause was not violated by the statements' admission, either through the playing of the tapes themselves or through the testimony of the officers.[2] Moreover, any Confrontation

---

[2]Common also appears to argue that the officers' testimony that they heard the female victim shout "he's got a gun" after they arrived at the scene was a Confrontation Clause

Clause violation would have been harmless under the circumstances. The substantive truth of the 911 caller's statements (*e.g.* that "he's got a gun") was not necessary to the government's case because other testimony established that Common was in possession of a firearm. *See United States v. Savoires*, 430 F.3d 376, 382 (6th Cir. 2005). Importantly, each of the testifying officers independently described having seen a gun or pistol in Common's hand. *See United States v. Hearn*, 500 F.3d 479, 485 (6th Cir. 2007); *cf. United States v. Nelson*, 725 F.3d 615, 621 (6th Cir. 2013) (concluding that the admission of a hearsay statement that a man matching the defendant's description had a gun was not harmless because "no officer testified to having seen [the defendant] possess a gun"). Accordingly, there is no merit to Common's pro se argument that his Confrontation Clause rights were violated.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Common's conviction for being a felon in possession of a firearm.

---

violation. At trial, Common's attorney did not object when the first two officers testified regarding the victim's statements. *See* R. 33 (Trial Tr. at 18, 44) (Page ID #78, 104). She raised an objection when the third officer gave similar testimony, *id.* at 71 (Page ID #131), but then withdrew it after the government argued that the testimony was admissible under the excited utterance exception to the hearsay rule. *See* Fed. R. Evid. 803(2). As with the 911 statements, the female victim's statements after the police officers arrived at the scene of the crime were nontestimonial in nature. Therefore, the Confrontation Clause was not violated by the officers' testimony.