NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0493n.06

Case No. 20-3614

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Oct 28, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JOSEPH KYLE SANDERS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

_____/

Before: GUY, COLE, and STRANCH, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Joseph Kyle Sanders was convicted by a jury of armed bank robbery and using or carrying and brandishing a firearm during that robbery. Sanders challenges the sufficiency of the evidence to support those convictions. After reviewing the record, we affirm the district court's denial of his motion for judgment of acquittal. *See* FED. R. CRIM. P. 29.

I.

Just before 5:00 p.m., on June 1, 2018, a masked gunman entered the Citizens Bank on Richmond Road in Richmond Heights, Ohio, and demanded of the three tellers, "Give us all your money, or I'll shoot you in the fucking head." The robber, whose identity was concealed by a face covering, gloves, and bulky clothing that included a pulled-up hoodie, was in the bank for less than one minute. Video surveillance captured the robber handing a black plastic bag to the tellers,

pacing back and forth in front of the counter, demanding money, and pointing the handgun at the tellers and a customer. The firearm appeared from the video to be a real semi-automatic Glock with an extended magazine. The tellers placed more than $14,000 in cash and a hidden dye pack in the black plastic bag before handing it back to the robber.

Fleeing behind the bank and a neighboring Firestone store, the robber dropped the bag of money and the dye pack exploded. The bank's external video cameras captured the robber dropping the bag and continuing to run away. Video from the Firestone store showed the robber run past in the direction of Geraldine Street. A woman who was questioned shortly after the robbery said she saw a dark-colored car driving "ridiculously" fast down Geraldine Street. One of the tellers testified that she noticed a black car sitting in the parking lot for about ten minutes before the robbery but then it was gone, and, a short time later, the robber came in yelling and demanding money. The robber was not apprehended.

Witnesses were not able to identify the robber because of the bulky clothing, gloves, and face covering. Two of them could not say if the robber was a man or a woman, but they all thought the robber's voice sounded like a man. Although their estimates of the robber's height varied, several witnesses described the robber as short or shorter than average. The information released by the FBI that day described the robber as 5' 5" tall.

The black plastic bag containing the cash and the exploded dye pack was recovered and sent for forensic examination. Evidence at trial established the amount of money taken and that the bank was FDIC insured. The FBI had been investigating a group of about twenty individuals calling themselves the Rack Gang in connection with more than thirty robberies of banks and credit unions in the Cleveland area in 2017 and 2018. Eight bank robberies had occurred in Richmond Heights during that time.

Sanders was not a suspect in the Citizens Bank robbery until he was implicated by Otis Pamplin during a "proffer" that followed his own arrest on unrelated robbery charges. Apprehended fleeing a robbery, Pamplin provided some false information before admitting to that robbery and an earlier attempted robbery. When Pamplin was asked for information about other crimes, he volunteered that Sanders had pointed out a bank that he said he had robbed. Pamplin described the bank as having a green sign and being located next to a red Firestone or fire station and a wooded area. Pamplin said Sanders also told him that a dye pack had gone off. Pamplin identified Sanders from a photo, although he knew Sanders as "Kyle," and allowed them to retrieve the phone number he had for Kyle from his cell phone. When Sanders was arrested at the home he shared with his mother, a cell phone was seized that had the same phone number that Pamplin had provided.

At trial, Pamplin testified that he was riding in a car with Sanders in July 2018, when Sanders pointed out a bank and said it "got robbed before." When questioned further, Pamplin clarified that Sanders had said that he robbed the bank and that a dye pack had exploded. On cross-examination, Pamplin admitted that he did not know Sanders well; that he had lied to the police about a number of things; and that he expected to benefit from telling the police that Sanders had bragged about committing the robbery. Pamplin pleaded guilty to the unrelated robbery charges with the promise of a reduced sentence based on his cooperation in this case.[1]

Forensic examination of the bag used in the robbery found an insufficient amount of DNA for analysis, but a usable palmprint and a fingerprint were recovered. The fingerprint was never identified, but the palmprint matched I'Ziah Clark. Clark's prints were taken when he was booked

---

[1] Although the jury was not told, Pamplin's cooperation agreement arose in connection with his convictions in a separate case in which he and Sanders were codefendants. Sanders was found guilty by a jury in that case, which is the subject of a separate appeal in No. 20-3963.

into jail on July 6, 2018. The booking information also noted Clark's height as 5' 11". No DNA or fingerprint evidence tied Sanders to the Citizens Bank robbery. Clark was interviewed and denied involvement in the Citizens Bank robbery. And when shown some photographs, Clark said he knew Sanders and said they would "hang out pretty much every day."

A search warrant was obtained for the contents of the phone seized when Sanders was arrested. (PageID 800.) The phone number—216-622-5315—was associated with an Apple ID of Gottichasing@icloud.com." Sanders was known from social media to use the name "Kyle Gotti." The contents of the phone included texts from the day of the robbery. At 2:22 p.m., Sanders texted a contact identified as "Trelly," saying "Bro, I'm trying to get some money. I ain't gotta keep doing this shit." Sanders also texted Trelly, "For real, you trying to take me to get the hamma. I got some bag." An FBI agent testified that "hamma" is commonly used to refer to a gun.

Other texts on the day of the robbery were sent between Sanders's phone and someone identified as "Zay" at 216-512-2270. That exchange started at 3:29 p.m. and began with Sanders texting Zay asking "wya," meaning "where you at." Zay responded "on the rug"; Sanders said, "I'm for real"; and Zay answered, "I'm on my way." After the robbery, internet searches on Sanders's phone included queries for: Rack Gang indicted, Richmond Heights robbery footage, an article from Cleveland.com about the robbery, and a story about the FBI looking for a 5' 5" person who robbed the Citizens Bank in Richmond Heights.

Although the number for "Zay" was associated with the subscriber name "King Kong," that number was posted as Clark's number more than thirty times on his Instagram account. There was even an Instagram message between Zay_44300 and Kyle.Gotti at 12:46 p.m., on June 1, 2018, saying "call me 512-2270." The Instagram account was associated with the email "I'ziahClark43@gmail.com" and photos of Clark were posted there before and after the robbery.

Cell site data for the two phones was obtained, including for the day of the robbery. There were five calls made to or from Clark's phone shortly before the robbery—at 4:43 p.m., 4:46 p.m., 4:49 p.m., 4:54 p.m., and 4:56 p.m.—all of which connected to the same antenna on a cell phone tower located a tenth of a mile from the Citizens Bank. Sanders's phone also used the same antenna on that cell phone tower to make a call at 4:40 p.m. on the day of the robbery before the phone went off the network for more than an hour. That is, there was no cell site data for Sanders's phone between the call at 4:40 p.m. and 5:58 p.m., which the government's expert testified would happen if the phone was turned off or the battery was dead. These were the only times either phone connected to the cell phone tower located a tenth of a mile from the Citizens Bank during the period between May 31 and June 6, 2018.

The government's expert witness explained that although a cell phone might not connect to the closest antenna, it will connect to the strongest and clearest signal. The phones could have been anywhere in the coverage area, including nearby restaurants, stores, and other businesses. Nor do the data show who used the phone or the content of the communications.

Two calls to Sanders's phone were recorded by the County Jail, however. At 4:03 p.m., less than an hour before the robbery, a call was made from an inmate to Sanders who answered and said he would have to call back because he was "about to do [his] thing." On the day after the robbery, the same inmate called Sanders and asked to talk to someone else. Sanders called to "No Lame," who got on the phone and explained that "Gotti" was "doing his thang . . . running" and was "about to score" when he "fucked himself" and "fumbled."

Sanders and Clark were charged with aiding and abetting each other in the armed bank robbery of the Citizens Bank and using or carrying and brandishing a firearm during and in relation to that robbery, in violation of 18 U.S.C. §§ 2113(a), (d), 924(c)(1)(A)(ii), and 2. After their joint

trial commenced, Clark entered a guilty plea and Sanders proceeded alone. When the government rested, the district court summarily denied Sanders's motion for judgment of acquittal. No further proofs were offered. After closing arguments, jury instructions, and deliberations, the jury found Sanders guilty of both the robbery and firearm offenses. Sanders was sentenced to consecutive terms for an aggregate of 128 months of imprisonment. This appeal followed.

## II.

The basis for a Rule 29 motion for judgment of acquittal need not be stated with specificity. *United States v. Hamm*, 952 F.3d 728, 740 (6th Cir. 2020). Here, Sanders preserved his challenge to the sufficiency of the evidence because a general motion was made at the close of the government's case and no further evidence was presented. *See United States v. Common*, 563 F. App'x 429, 432-33 (6th Cir. 2014) (quoting *United States v. Kubeck*, 487 F.2d 1256, 1258, (6th Cir. 1973)). As such, we review the denial de novo, applying the same standard as the district court. *See United States v. Ashraf*, 628 F.3d 813, 822 (6th Cir. 2011).

A defendant bears a very heavy burden when challenging the denial of a Rule 29 motion. *See United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Ashraf*, 628 F.3d at 822. It is the jury's job, not ours, "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see also United States v. Mathis*, 738 F.3d 719, 735 (6th Cir. 2013). We will reverse for insufficiency of the evidence "only if this judgment is not supported by substantial and competent evidence upon the record as a

whole." *United States v. Williams*, 998 F.3d 716, 728 (6th Cir. 2021) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).

There can be no doubt that the evidence established that an armed bank robbery was committed in violation of 18 U.S.C. § 2113(a) and (d). As the jury was instructed, there must be proof of: (1) an intentional taking of money belonging to the bank from or in the presence of a bank employee; (2) that was done using intimidation or force and violence; (3) from a bank whose deposits were insured by the FDIC at the time of the robbery; and (4) that a dangerous weapon or device was used to assault someone or put someone's life in jeopardy. *See United States v. Sullivan*, 431 F.3d 976, 982 (6th Cir. 2005). Likewise, the robber violated 18 U.S.C. § 924(c)(1)(A)(ii) by (1) committing the armed bank robbery, a crime of violence, and (2) knowingly using or carrying a firearm, (3) during and in relation to the armed bank robbery. *See United States v. Myers*, 854 F.3d 341, 351 (6th Cir. 2017). And the jury made the separate finding that a firearm was brandished. (PageID 953.) *See Alleyne v. United States*, 570 U.S. 99, 117 (2013).

What Sanders contends is that the evidence was insufficient to establish that *he* was the masked robber who brandished the firearm. It is true that he was not identified as the robber by the tellers or the customer in the bank or from photographs or video of the robber. Nor was physical evidence (*i.e.*, DNA or fingerprint) belonging to Sanders found in the bank or on the bag of money. We cannot agree, however, that the jury's finding of guilt could have rested only on unreasonable inferences or impermissible speculation.

The cooperating witness Otis Pamplin testified that Sanders pointed out the bank, said he had robbed it, and told him that a dye pack had exploded. Sanders argues that Pamplin could not be believed because he lied to the police before, expected to benefit from his testimony, and

equivocated by testifying that Sanders told him that the "bank got robbed" before saying Sanders said he had robbed that bank. The jury heard all of this at trial, along with the details about Pamplin volunteering the information as part of a proffer after being apprehended on unrelated robbery charges. Pamplin told police that Sanders pointed out a bank that had a green sign and was next to a Firestone or fire station. "A trial witness's credibility, however, is not relevant on review of a Rule 29 motion for judgment of acquittal." *United States v. Cordero*, 973 F.3d 603, 614 (6th Cir. 2020). "It was the jury's prerogative to believe what [Pamplin] had to say." *Id.*; *see also United States v. Guthrie*, 557 F.3d 243, 253 (6th Cir. 2009) ("We do not independently assess the credibility of witnesses or the weight of the evidence."). Nor was that the only evidence pointing to his guilt.

Although Sanders argues that it was impermissible or unreasonable to rely on the circumstantial evidence presented, the jury's verdict is afforded "the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) (citation omitted). "It is not necessary that circumstantial evidence remove every reasonable hypothesis except that of guilt." *Stone*, 748 F.2d at 363; *see also Carter*, 355 F.3d at 925. Sanders only generally fit the stature of the robber, but there was evidence that Clark was 5' 11". It also is possible that the phones connected to the antenna closest to the bank for an innocent reason—like they were in a nearby restaurant or store—but it also placed both Clark and Sanders in the vicinity of the robbery shortly before it happened. But the fact that Clark's palmprint was on the bag used in the robbery suggests otherwise. The content of the phones included texts between Sanders and Trelly on the afternoon of the robbery about needing to get money and needing the "hamma." An hour and a half before the robbery, Sanders texted Clark saying, "I am for real," to which Clark responded, "I'm on my way." And

on a recorded call from the jail to Sanders's phone at 4:01 p.m. on the day of the robbery, Sanders could be heard putting off the call because he was "about to do my thing." It would be reasonable for the jury to infer that Sanders was busy because he and Clark were about to rob the bank. That is more so because the recorded call to Sanders's phone the next day included a report that Sanders was "doing his thang . . . running" and was "about to score" when he "fucked himself" and "fumbled."

Drawing all reasonable inferences and resolving all credibility issues in favor of the jury's verdict, a rational trier of fact could conclude that Sanders was the one who robbed the bank while brandishing a firearm. The judgment is **AFFIRMED**.