RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0091p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

PATRICK D. REED,

        *Petitioner-Appellant*,

    *v.*

HAROLD MAY, Warden,

        *Respondent-Appellee*.

> No. 23-3686

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:21-cv-00799—James S. Gwin, District Judge.

Argued: October 29, 2024

Decided and Filed: April 11, 2025

Before: STRANCH, THAPAR, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Aaron M. Smith, GIBSON, DUNN & CRUTCHER, LLP, Washington, D.C., for Appellant. Hilda Rosenberg, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Aaron M. Smith, David Debold, GIBSON, DUNN & CRUTCHER, LLP, Washington, D.C., John H. Heyburn, Laura Londoño Pardo, Azucena Marquez, GIBSON, DUNN & CRUTCHER LLP, New York, New York, for Appellant. Hilda Rosenberg, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

      THAPAR, J., delivered the opinion of the court in which MURPHY, J., concurred. STRANCH, J. (pp. 15–34), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

THAPAR, Circuit Judge.  Patrick Reed is in prison for drug trafficking, drug possession, firearm possession, and evidence tampering.  Reed claims the state trial court violated his Confrontation Clause rights when it admitted an out-of-court statement.  The Ohio courts and the federal district court rejected this claim, and we affirm.

I.

With help from confidential informants, the police set up multiple controlled purchases of drugs from Patrick Reed.  The drug buys took place near a house on Larchmont Drive in Sandusky, Ohio.  In the wake of these purchases, the police got a search warrant for the Larchmont house.  In the house, they found firearms, ammunition, cash, two digital scales with drug residue, and a safe with white powder on it.  On the roof of the garage, the police also found several bags containing heroin, heroin mixed with fentanyl, and small amounts of cocaine.  And they found evidence connecting Reed to the house:  mail addressed to him, paperwork, bank statements, account passwords, and shoes and clothing in his size.

At Reed's trial, a detective testified about the investigation.  He explained how the police obtained a warrant to search the Larchmont residence.  He walked through the results of the house search:  guns, drug paraphernalia, and Reed's personal belongings.  And he confirmed that they found "plastic bags of narcotics . . . located in the coffee mug in the gutter" of the garage roof.  R. 6-8, Pg. ID 1658.

The prosecution then asked, "Could you explain how or why—why you looked on the roof and what—how did you get there?"  *Id.* at Pg. ID 1660.  Over Reed's objection, the detective responded that "[w]e had information . . . from a confidential source that Mr. Reed concealed narcotics in several different locations."  *Id.* at Pg. ID 1661.  One of those places, according to the informant, "may be in the gutter" on the roof of the garage because Reed had "recently been robbed for narcotics."  *Id.*  The detective then obtained a ladder, climbed to the

roof, and found a coffee mug in the gutter. The coffee mug contained plastic bags of heroin, fentanyl, and cocaine.

At this point, the trial court interjected. It reminded the jury they could consider the confidential informant's tip only to explain why the detective "did what he did in his investigation." *Id.* at Pg. ID 1662. The tip was not admissible for the "truth of what [it] asserted." *Id.* The jury convicted Reed on all counts.

On direct appeal, Reed argued, among other things, that the detective's testimony violated his Confrontation Clause rights because the confidential informant never testified. Thus, Reed never had an opportunity to cross-examine the informant. *State v. Reed*, Nos. E-18-017 & E-18-018, 2020 WL 261697, at *8 (Ohio Ct. App. Jan. 17, 2020).

The Ohio Court of Appeals rejected Reed's Confrontation Clause claim. The appeals court explained that the trial court "instructed the jury that the testimony was to be considered only to explain what the officer did during the investigation." *Id.* at *9. "Presuming that the jury followed the court's instructions," the Ohio appeals court found no error. *Id.* The Ohio Supreme Court declined to hear Reed's appeal. *State v. Reed*, 150 N.E.3d 958 (Ohio 2020) (table).

Reed then went to federal court and petitioned for a writ of habeas corpus, again arguing that his Confrontation Clause rights had been violated. The federal district court dismissed Reed's petition. But the district court certified one question for our review: whether the Ohio trial court properly admitted the detective's testimony that an informant told him where Reed kept his drugs.

## II.

Our review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA constrains federal courts' ability to adjudicate collateral attacks by state prisoners on their convictions. Pub. L. 104–132, 110 Stat. 1214 (1996). AEDPA's "re-litigation bar" applies when a state court denies a prisoner's claim on the merits, rather than denying it for procedural reasons. *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The Ohio courts addressed Reed's Confrontation Clause claim, so the "re-litigation bar" applies

here. *Reed*, 2020 WL 261697, at *8–9. Thus, Reed isn't entitled to habeas relief unless Ohio's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[1]

Clearly established federal law refers to the holdings, not the dicta, of Supreme Court opinions at the time of the state court's decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (majority opinion of O'Connor, J.). "Contrary to" means the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to Supreme Court precedent to merit habeas relief. *Id.* at 405 (citation omitted). A state court decision is "contrary to" clearly established federal law if it (1) "applies a rule that contradicts governing Supreme Court law" or (2) confronts "materially indistinguishable" facts from a Supreme Court case and arrives at a different result. *Smith v. Nagy*, 962 F.3d 192, 198 (6th Cir. 2020) (citation omitted).

Meanwhile, a state court decision that "correctly identifies the governing legal rule but unreasonably applies it to the facts" amounts to an "unreasonable application" of clearly established federal law. *Id.* at 199; *see White v. Woodall*, 572 U.S. 415, 426–27 (2014).[2] Under this standard, so long as "fairminded jurists could disagree" on whether the Ohio courts correctly decided Reed's claim, habeas relief is unavailable. *Harrington*, 562 U.S. at 101 (citation omitted).

When analyzing state court decisions under § 2254(d), we don't "flyspeck [their] opinions." *Rogers v. Mays*, 69 F.4th 381, 391 (6th Cir. 2023) (en banc). After all, the Ohio courts could've summarily denied Reed's claim without providing any reasons or citing any caselaw. *Harrington*, 562 U.S. at 98. Instead, our job is to determine what arguments supported,

---

[1]Reed doesn't make an argument under § 2254(d)(2), which authorizes habeas relief for decisions "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

[2]The dissent acknowledges that we can't set aside state court determinations for failing to extend a particular line of caselaw. But since the Supreme Court has not "establish[ed] clearly the specific rule [that Reed] needs" here, that is precisely what granting Reed habeas relief would entail: faulting the Ohio courts for not extending Confrontation Clause precedent. *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam).

or could've supported, the state court's decision. *Id.* at 102. We then ask whether Reed has met his burden to show that the Ohio Court of Appeals' decision is so flagrantly inconsistent with a specific Supreme Court holding that no fairminded jurist could think otherwise. *Id.* at 98, 102. That is "the only question that matters under § 2254(d)(1)." *Id.* at 102 (citation omitted). "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Reed's claim doesn't fare well under this standard. First, we explain what the Confrontation Clause prohibits (testimonial hearsay) and what it does not (statements offered for a non-hearsay purpose.) Second, we address Reed's main argument—that even testimony with a non-hearsay purpose, accompanied by limiting instructions, can amount to a Confrontation Clause violation. We conclude that the Supreme Court hasn't established Reed's desired rule.

A.

The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right prohibits the introduction of testimonial hearsay against criminal defendants. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). What types of evidence qualify as testimonial hearsay?

A statement is testimonial if the "primary purpose" of that statement was to "establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). The parties don't dispute that the confidential informant's statements were testimonial. *See United States v. Deitz*, 577 F.3d 672, 683 (6th Cir. 2009). The police elicited these statements while investigating and gathering evidence against Reed.

But a testimonial statement doesn't automatically trigger the Confrontation Clause. For the Clause's protections to kick in, the statement must have also been hearsay. *Id.* Hearsay is an out-of-court statement introduced for the "truth of the matter asserted" in the statement. *Anderson v. United States*, 417 U.S. 211, 219 (1974); 2 McCormick on Evidence § 246 (8th ed. 2022). The Confrontation Clause simply doesn't apply to "the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 60 n.9. Out-of-court statements can be introduced for many purposes besides their truth—for instance, to

impeach a witness's credibility or to show their effect on a listener. *See, e.g.*, *Tennessee v. Street*, 471 U.S. 409, 413–14 (1985) (impeachment); *United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011) (effect on listener). An out-of-court statement is only hearsay if it's admitted for a hearsay purpose. So, "a court analyzing a confrontation claim must identify the role that a given out-of-court statement . . . served at trial." *Smith v. Arizona*, 602 U.S. 779, 793 (2024).

The statements here were not hearsay.

Start with what the detective said. Remember, he explained, "Mr. Reed concealed narcotics in several different locations . . . The second place was inside the garage, but we had also learned from this confidential source that Mr. Reed [had] recently been robbed for narcotics outside that were in the garage, so they may [have been] in the gutter at this time because he changed the location." R. 6-8, Pg. ID 1661.

The "matter asserted" in that statement is that Reed hid drugs in several places—including in the gutter. But the trial court did not admit the statement for its "truth"—that is, the court did not admit the statement to show that Reed actually hid drugs in those places. Rather, the statement was admitted to explain *why* the police searched the roof. That's a valid, non-hearsay purpose. And the trial court instructed the jury to consider the statements only insofar as they might explain the officer's basis for searching the roof: "[Y]ou're not to interpret [the statement] to mean that[] . . . what's asserted is the truth, but you're only to weigh [it] in conjunction with why this officer did what he did in his investigation." *Id.* at Pg. ID 1662. The Ohio Court of Appeals affirmed, "[p]resuming that the jury followed the court's instructions." *Reed*, 2020 WL 261697, at *9.

Nothing about this decision was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court. The Supreme Court's current precedent holds that the Confrontation Clause bars the use of testimonial hearsay. *See Smith*, 602 U.S. at 792. Because the Ohio trial court admitted the confidential informant's statement for a non-hearsay purpose, there's no Confrontation Clause problem here under that precedent.

B.

Even still, Reed argues that the Ohio Court of Appeals unreasonably applied Supreme Court precedent because a non-hearsay purpose—such as explaining an officer's search—can still violate the Confrontation Clause. Reed contends that the non-hearsay "course-of-the-investigation" purpose was a sham, and that the confidential informant's statements actually came in for their truth. Reed's argument fails for a simple reason: He can't cite to clearly established federal law by the Supreme Court adopting his position.

Reed needs to point to a rule that admitting testimony to explain an officer's search violates the Confrontation Clause. He can't just cite a general right. Why? "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 101 (citation omitted). Thus, it's not unreasonable for a court to reach a given outcome based on a broadly defined right. That makes sense: We don't require state courts to read the tea leaves in Supreme Court opinions and divine the Court's next holding in a case with different facts. Reed, therefore, must cite a specific rule that leads to an answer in his case—indeed, an answer so clear that no fairminded jurist could agree with the Ohio Court of Appeals. *See id.* at 102.

Thus, Reed must show that "background information" or "course-of-the-investigation testimony" is an illegitimate non-hearsay purpose under the Confrontation Clause. He fails to do so.

The Supreme Court hasn't said that explaining a police officer's conduct isn't a legitimate non-hearsay purpose. And it can't be an unreasonable application of clearly established federal law for "a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Id.* at 101 (quotation omitted).

Reed points to *Crawford* and *Davis* as clearly established federal law that the Ohio courts unreasonably applied. True, those cases constitute clearly established federal law for AEDPA purposes. But they don't do the work that Reed needs them to do. Why? The cases don't have anything to say about confidential informant statements admitted to explain police officer conduct.

Start with *Crawford*. *Crawford* established the rule that testimonial hearsay violates a criminal defendant's rights, subject to exceptions not relevant here. 541 U.S. at 59. There, the state admitted out-of-court testimony to prove the truth of the matter asserted—that the defendant didn't act in self-defense. *Id.* at 40. The state invoked a hearsay exception to do so; the state didn't argue that the statements were being offered for a non-hearsay purpose. *Id.* But hearsay exceptions aren't the same as non-hearsay statements. *See* Fed. R. Evid. 801(c) (defining hearsay); Fed. R. Evid. 803, 804 (listing hearsay exceptions). After all, a hearsay exception acknowledges that a statement is hearsay, but lets the jury hear it anyway. Non-hearsay statements, by contrast, aren't hearsay. They're not being offered for the truth of the matter asserted—which is precisely what makes a statement hearsay.

Thus, *Crawford* didn't displace state or federal evidentiary law on what constitutes a non-hearsay purpose. In fact, *Crawford* expressly disclaimed that the Confrontation Clause applied to non-hearsay statements. *Crawford*, 541 U.S. at 60 n.9.; *see also Williams v. Illinois*, 567 U.S. 50, 57–58 (2012) (plurality opinion) (reiterating that the Confrontation Clause "has no application to out-of-court statements that are not offered to prove the truth of the matter asserted").

Second, *Davis* fleshed out what it means for a hearsay statement to be *testimonial*, not what it means for a statement to be *hearsay*. There, the Court confronted a challenge to the admission of a victim's 911 call that identified the defendant as the perpetrator. *Davis*, 547 U.S. at 819. The Court analyzed whether the "primary purpose" of the statement was to meet an ongoing emergency or to gather information for a prosecution. *Id.* at 822. But *Davis* didn't say anything about the application—or, more accurately, the non-application—of the Confrontation Clause to statements introduced for non-hearsay purposes. So *Davis* doesn't clearly establish Reed's desired rule.

In sum, neither *Crawford* nor *Davis* sets out a rule about statements admitted for non-hearsay purposes, let alone statements admitted for the specific non-hearsay purpose here. So, they don't squarely control the question presented by Reed's appeal to the Ohio courts. Indeed, here, the state articulated a non-hearsay purpose and the trial court gave limiting instructions to that effect, which makes Reed's case different from *Crawford* and *Davis*.

If anything, there is Supreme Court precedent supporting the Ohio courts' decisions. In *Tennessee v. Street*, the Court affirmed the district court's decision to admit a co-conspirator's confession that directly accused the defendant of murder—the crime for which he was on trial. 471 U.S. at 417. There, the defendant had argued that the police coerced him into confessing. *Id.* at 411. In response, the prosecution presented the co-conspirator's confession for the non-hearsay purpose of rebutting the defendant's coercion argument. *Id.* at 411–12. The trial court instructed the jury to only consider the confession for that purpose. *Id.* at 412. The Supreme Court found that the "*nonhearsay* aspect" of the co-conspirator's confession "raise[d] no Confrontation Clause concerns." *Id.* at 414. Indeed, the confession was introduced for the "legitimate, nonhearsay purpose" of rebutting the defendant's coercion argument. *Id.* at 417. And, to guard against any misuse by the jury, the trial court issued limiting instructions that directed the jury "to this distinctive and limited purpose." *Id.* In short, *Street* tells us that limiting instructions—like those used by the trial court here—guard against Confrontation Clause violations.

The dissent faults the Ohio Court of Appeals for not defining the inquiry as whether the non-hearsay purpose was legitimate, distinctive, and limited under *Street*. But that is not the standard under AEDPA. Again, the question is whether the Ohio courts' decision to deny Reed's claim was so inconsistent with Supreme Court caselaw that no fairminded jurist would agree with it. *Street*'s bottom line supports the Ohio courts' decision here: limiting instructions can avert Confrontation Clause problems when there's a legitimate non-hearsay purpose. And *Street* endorses the very same presumption that the dissent faults the Ohio Court of Appeals for noting: the "crucial assumption" that jurors follow limiting instructions. *Street*, 471 U.S. at 415 (citation omitted).

The dissent also relies on *Williams v. Illinois*. But *Williams*, like *Crawford* and *Davis*, doesn't get Reed past the relitigation bar. These cases all set forth general Confrontation Clause principles. Their facts are light-years from Reed's case. *Williams* concerned the use of forensic expert reports to show the basis for an expert witness's opinion. 567 U.S. at 56. Nothing in *Street*, *Williams*, *Crawford*, or *Davis* suggests that "background" or "course-of-the-investigation"

testimony is illegitimate—let alone makes it so clear that it was objectively unreasonable for the Ohio courts to conclude otherwise.

Next, the dissent cites *Andrew v. White* for the proposition that "[g]eneral legal principles can constitute clearly established law for purposes of AEDPA" when the Supreme Court "relies on a legal rule or principle to decide a case." 145 S. Ct. 75, 81–82 (2025) (per curiam). But that case is inapposite. It dealt with an entirely different prong of habeas review than the one at issue in this case.

In *Andrew*, the Tenth Circuit noted an earlier statement from the Supreme Court that the Due Process Clause of the Fourteenth Amendment bars the introduction of "unduly prejudicial evidence" that "renders a trial fundamentally unfair." 145 S. Ct. at 80 (cleaned up). However, the Tenth Circuit concluded that this wasn't actually a holding of the Supreme Court that qualified as clearly established law. *Id.* Exercising de novo review, the Supreme Court disagreed. *Id.* at 83. The Court explained that the due-process language invoked by the Tenth Circuit was "clearly established law." *Id.* And because the Tenth Circuit erred in concluding otherwise, the Tenth Circuit didn't move to the "unreasonable application" prong of habeas review. *Id.* at 83 (explaining that the lower court "never considered whether the state court's application of that [clearly established] law was reasonable"). So the Supreme Court instructed the Tenth Circuit to consider that question. *Id.* And the Court reaffirmed the oft-repeated test: "An unreasonable application . . . is one with which no fairminded jurist would agree." *Id.* at 80.

The Court's reminder that "[g]eneral legal principles can constitute clearly established law" is not remarkable. *Id.* at 82. The Court simply reiterated that there are times where no fairminded jurist would dispute that a constitutional violation had been committed, given the existence of a well-known legal rule—even when the relevant legal rule was formulated at a high level of generality. *See id.* To use the Court's own example, it's clearly established that "a sentence may not be grossly disproportionate to the offense." *Id.* That's a well-established holding of the Supreme Court, even though it's defined at a high level of generality. And a lower court would not be permitted to say otherwise.

But *Andrew* doesn't bear on our case—which is a dispute about unreasonable application, not the existence of clearly established law. Here, all agree that the Confrontation Clause bars the introduction of testimonial hearsay against criminal defendants. That's a holding of the Supreme Court that constitutes clearly established law. But the question here is whether the state courts unreasonably applied that clearly established law. And "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 101 (citation omitted). The *general* Confrontation Clause principles that Reed relies on do not inevitably lead to a *specific* answer in his case—certainly not an answer so clear that no fairminded jurist would agree with the Ohio courts.

* * *

In sum, the Court has been clear that the Confrontation Clause doesn't apply to non-hearsay statements. *Crawford*, 541 U.S. at 60 n.9; *Smith*, 602 U.S. at 785. And the Court has affirmed the introduction of co-conspirator confessions—one of the most prejudicial types of testimony—for non-hearsay purposes when accompanied by limiting instructions. *Street*, 471 U.S. at 417.

The Ohio courts followed this exact procedure. The trial court admitted the confidential informant's statement for the non-hearsay purpose of explaining why the police searched the roof. And it issued a limiting instruction that directed the jury to consider the confidential informant's statement only for that purpose. Dismissing Reed's Confrontation Clause challenge on appeal wasn't an unreasonable application of Supreme Court precedent.

C.

As we've shown, Reed can't point to clearly established Supreme Court precedent that the Ohio courts contradicted or unreasonably applied. So, to support his desired rule—that "course-of-the-investigation testimony is never permissible where it implicates the defendant in criminal activity"—Reed resorts to our circuit's caselaw. Appellant Br. at 26. Reed distinguishes between confidential informant statements that accuse the defendant of a crime and those that serve as purely background testimony. He argues that the confidential informant's statement that he hid drugs in the gutter falls on the impermissible side of that line.

But the problem is that Sixth Circuit precedent isn't enough to surpass AEDPA's re-litigation bar. *Renico v. Lett*, 559 U.S. 766, 779 (2010); *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam). What's more, our court has denied habeas when a witness's out-of-court statement was used to show why the police took certain actions. *Gover v. Perry*, 698 F.3d 295, 304 (6th Cir. 2012). Why? Because there wasn't a Supreme Court case on point. *Id.* at 307. Reed's argument has the same Achilles' heel.

### III.

The dissent makes two fundamental mistakes. First, the dissent misunderstands our job under § 2254(d). The dissent's position is that the Ohio Court of Appeals "simply presum[ed] that the limiting instruction was automatically sufficient" and thus "failed to identify the correct test under clearly established Federal law." Dissenting Op. at 21. To the dissent, that was enough to meet the "contrary to" prong of § 2254(d) and justify de novo review. *Id.*

But that's not right. The Ohio courts could have summarily denied Reed's Confrontation Clause claim with no opinion at all. *Harrington*, 562 U.S. at 98. They didn't need to cite caselaw. They didn't need to "identify the correct test," let alone the dissent's reading of Supreme Court precedent. That's because § 2254(d) tells us to defer, unless the state court adjudication resulted in a *decision* that's contrary to or an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). What matters is whether the decision is contrary to an actual holding of the Supreme Court. *White*, 572 U.S. at 420. Section 2254(d) does *not* authorize us to uncharitably construe state court opinions. *See Dunn v. Reeves*, 594 U.S. 731, 742 (2021) (per curiam). Nor does it authorize us to conduct a de novo analysis of the merits before "tacking on a perfunctory statement . . . that the state court's decision was unreasonable." *Shinn v. Kayer*, 592 U.S. 111, 119 (2020) (per curiam) (citation omitted).

Nevertheless, the dissent does just that and faults the Ohio Court of Appeals for something it was not required to do. As discussed above, to get past the relitigation bar, there must be *no* room for fairminded disagreement. All fairminded jurists must agree that the Ohio courts' decision was inconsistent with clearly established federal law.

Second, the dissent errs by relying on circuit precedent, like Reed did. And the dissent goes even further afield from AEDPA by resorting to out-of-circuit precedent. To its credit, the dissent recognizes that opinions of circuit courts don't constitute "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Parker*, 567 U.S. at 48–49 ("[C]ircuit precedent . . . cannot form the basis for habeas relief under AEDPA."). But even if Ohio courts were required to survey the federal reporters, the dissent's citations to cases in which our sister circuits granted habeas relief wouldn't change the result in Reed's case.**[3]**

For starters, in *Jones v. Basinger*, the testimony was "detailed," "extensive," and "far beyond any arguably legitimate 'course of investigation' use." 635 F.3d 1030, 1036 (7th Cir. 2011). And the prosecution bolstered the credibility of the non-testifying confidential informant, "a point that would have been completely irrelevant if the tip were not being used to prove the truth of its contents." *Id.* at 1036–37. Finally, the trial court never issued limiting instructions. *Id.* at 1037. Though *Jones* acknowledged that generally it was "bound by the state courts' conclusion that [the] statement was offered not for its truth," the record showed "beyond reasonable dispute" that the statement was offered and used for its truth. *Id.* at 1042. There are ample grounds to distinguish *Jones*: (1) the tip here was neither detailed nor extensive; (2) the prosecution didn't heavily rely on this tip; and (3) the trial court issued limiting instructions.

*Taylor v. Cain* is likewise inapt, since the state courts didn't rely on the non-hearsay purpose of explaining a police officer's conduct to admit a confidential informant's tip. 545 F.3d 327 (5th Cir. 2008). In fact, the Louisiana appeals court found that the statements at issue *were* hearsay. *Taylor v. Cain*, No. 06-2482, 2007 WL 1805668, at *12 (E.D. La. June 22, 2007).

Finally, *Orlando v. Nassau County District Attorney's Office* dealt with the admission of a co-conspirator's confession—a clearly established violation under *Bruton v. United States*, 391 U.S. 123 (1968). 915 F.3d 113, 121–23 (2d Cir. 2019). As the *Orlando* court itself

---

**[3]**The dissent's other citations are to cases on *direct* review, not collateral review under AEDPA. The dissent justifies its reliance on circuit caselaw as "showing what is [a] reasonable" application of Supreme Court precedent. Dissenting Op. at 24 n.2. But circuit caselaw cannot "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam).

acknowledged, *Bruton* is the exception to the rule that a limiting instruction "is generally sufficient to eliminate Confrontation Clause concerns." *Id.* at 121 (cleaned up). Thus, it does nothing to undercut the legitimacy of the course-of-investigation testimony or the sufficiency of the limiting instructions here.

In short, even if these cases "clearly established" federal law, they would not change the outcome. Congress supplied us with a "constitutionally valid rule of decision" in § 2254(d), and it is our job to "follow it." *Brown v. Davenport*, 596 U.S. 118, 127 (2022).

\*       \*       \*

The district court properly denied Reed's habeas petition. We affirm.

———————————

**DISSENT**

———————————

JANE B. STRANCH, Circuit Judge, dissenting. I respectfully dissent from the majority opinion because it allows state courts to adopt an unreasonable interpretation of the Supreme Court's Confrontation Clause jurisprudence, ignores several key constitutional precedents, and creates a circuit split where none need exist. Because the Ohio courts acted in a manner that was both contrary to and unreasonable under clearly established federal law, I would reverse the judgment of the district court and grant the writ of habeas corpus.

**I. BACKGROUND**

Careful attention to the procedural history is important in this case, so I set it forth below.

1. <u>Ohio Trial.</u>

On July 9, 2016, Reed was indicted. For the drugs found during the raid at issue in this case, Reed was charged with possession of 42.04 grams of heroin (Count 2), preparation of 42.04 grams of heroin for sale (Count 3), possession of less than 0.10 grams of cocaine (Count 4), and aggravated possession of 4.14 grams of Fentanyl (Count 5). For the firearms found during the same raid, Reed was charged with two counts of having a weapon while under disability (Counts 6 and 7).

At Reed's trial in January of 2018, the Officer who searched the roof of the Larchmont house was permitted to recount the tip he had received from his informant about Reed keeping drugs in the gutter on the roof. The state previewed that they would be offering this testimony in opening statements, telling the jury:

> Now, they continue searching, and Detective Brotherton had information that the defendant hides his drugs outside in the gutters of his house. So he calls the fire department, has 'em help him, get him up onto the roof, and what do you know? He finds a coffee mug sitting . . . in the gutter filled with drugs, filled with drugs.

On direct examination, the Officer who searched the roof testified that the Officers had searched every part of the house, documented every item of note within the house, and found

drugs in the gutter on the roof. The prosecutor then asked why the Officers had searched the roof. Defense counsel objected and the court overruled. The Officer testified:

> [W]e had information from . . . a confidential source that Mr. Reed concealed narcotics in several different locations. . . . The second place was inside the garage, but we had also learned from this confidential source that Mr. Reed had bas—recently been robbed for narcotics outside that were in the garage, so they may be in the gutter at this time because he changed the location.

The court then gave the following limiting instruction to the jury:

> Ladies and gentlemen, we talked a little bit about what hearsay is last week, just in general, and hearsay, of course, is a statement made by somebody that's not coming into Court, that's not subject to cross examination, and the statement's being offered for the truth of what—for the matter asserted, for what it is.

> Certain exceptions in the law. One exception would be to explain the officer's conduct and why they did what they did, not for the truth of what was asserted.

> So when this officer was testifying that the confidential informant told him gutter and garage and things of that nature, you're not to interpret that to mean that's truly what—what's asserted is the truth, but you're only to weigh it in conjunction with why this officer did what he did in his investigation, okay?

At the close of trial, Reed was convicted on all counts.

## 2. Ohio Appeal.

Reed appealed his conviction to the Ohio Court of Appeals and, among other claims of error, alleged that his rights under the Confrontation Clause had been violated when the trial court permitted the Officer to testify that he had been informed that Reed kept his drugs in the gutter on the roof. *State v. Reed*, Nos. E-18-017, E-18-018, 2020 WL 261697, at *8 (Ohio Ct. App. Jan. 17, 2020).

> The Ohio Court of Appeals analyzed the issue as follows:

> Finally, appellant contends that he was prejudiced by the improper admission of testimony regarding a tip from an anonymous informant that he concealed drugs in a "green bean can" or in the garage or the roof of the garage. Officer Brotherton testified that based on this information they accessed the roof where heroin, cocaine, and fentanyl were found in a coffee mug. Following appellant's counsel's objection, the court instructed the jury that the testimony was to be

considered only to explain what the officer did during the investigation. Presuming that the jury followed the court's instructions, we find no error.

*Id.* at *9. Reed appealed this decision to the Ohio Supreme Court, but the Ohio Supreme Court did not accept the appeal for review. *State v. Reed*, 150 N.E.3d 958 (Ohio 2020).

### 3. Federal Proceedings.

Reed filed a petition for a writ of habeas corpus in federal district court on April 14, 2021, alleging that his rights under the Confrontation Clause had been violated, along with three other claims. The district court denied Reed's petition on grounds that "[o]ut of court statements offered to explain why police officers took the actions they did do not . . . infringe the confrontation right. Here, the trial court admitted the out-of-court statement to explain why police searched the roof." R. 18, Order, PageID 3123-24 (cleaned up). The district court concluded, in the alternative, that any violation that did occur was harmless in light of the other evidence presented by the State. R. 18, PageID 3124. The district court denied Reed's petition for a writ of habeas corpus but granted a certificate of appealability regarding the confrontation issue. R. 18, PageID 3128. Reed timely appealed.

## II. ANALYSIS

### A. Reed's Constitutional Claim

Because this is a habeas action, our ability to grant relief is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See generally* 28 U.S.C. § 2254. AEDPA prohibits a federal habeas court from granting relief on "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," *id.* § 2254(d)(1), or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Reed does not allege that the state court made an unreasonable determination of the facts, so our analysis is confined to whether the state court opinion passes the clearly established Federal law test set by § 2254(d)(1). If we determine that the state court erred by applying a rule contrary to clearly established federal law or by unreasonably applying clearly established federal law under

§ 2254(d)(1), we then consider the merits of the petitioner's constitutional claim de novo. *Fulcher v. Motley*, 444 F.3d 791, 799 (6th Cir. 2006).

1. The Section 2254(d)(1) Test.

Section 2254(d)(1) provides two ways in which the AEDPA bar on relief may be lifted. First, the court may act "contrary to" clearly established federal law, and, second, the court may unreasonably apply clearly established federal law. Clearly established federal law is comprised only of principles set forth in a single source: the holdings of Supreme Court decisions. *Fields v. Jordan*, 86 F.4th 218, 232 (6th Cir. 2023). "By requiring federal courts to identify a Supreme Court holding to grant relief, AEDPA bars us from grounding that relief in other sources, such as our own decisions." *Id.* at 231. A state court acts contrary to such law when it applies a rule different from the governing law explicitly set forth by the Supreme Court or decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies such a rule when it unreasonably applies the governing legal principle to the facts of a particular case. *Id.*

Begin, then, with the relevant clearly established federal law. The Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court, in *Crawford v. Washington*, gave courts a clear directive regarding the application of this clause at trial: "Testimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. 36, 59 (2004). Statements "are testimonial when the circumstances objectively indicate that . . . the primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). There is an exception to the *Crawford* rule: The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9. So far, I agree with the majority.

But the majority blatantly overlooks the fact that the Supreme Court has established rules governing when a particular statement which could be incriminating if taken for its truth may,

nonetheless, be admitted for an alternative purpose. In *Tennessee v. Street*, the Court considered whether a statement, made by a former co-conspirator during his confession, which accused the defendant of the crime for which he was on trial, could be admitted along with a limiting instruction that the statement was not to be taken for the truth of the matter asserted. 471 U.S. 409, 411–12 (1985). The Court held that it could. *Id.* at 416. But the Court made clear that, in doing so, it was evaluating whether, "in light of the competing values at stake, we may rely on the 'crucial assumption' that the jurors followed 'the instructions given them by the trial judge.'" *Id.* at 415 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (internal quotation marks omitted)). In concluding that the jurors would follow that instruction, the court relied heavily on the fact that there was a legitimate truth-seeking function for which the jury could use the evidence. *Id.* (noting that the Confrontation Clause's "very mission" is to "advance 'the accuracy of the truth-determining process in criminal trials'" (quoting *Dutton v. Evans*, 400 U.S. 74, 89 (1970)). The Court ultimately summarized the law as follows:

> The State introduced Peele's confession for the legitimate, nonhearsay purpose of rebutting respondent's testimony that his own confession was a coerced "copy" of Peele's statement. The jury's attention was directed to this distinctive and limited purpose by the prosecutor's questions and closing argument. In this context, we hold that the trial judge's instructions were the appropriate way to limit the jury's use of that evidence in a manner consistent with the Confrontation Clause.

*Id.* at 417. The legitimate, distinctive, and limited purpose, then, is key to whether testimony that would otherwise violate the Confrontation Clause may be offered.

> The Supreme Court's precedent on this issue has been summarized as follows:

> Of particular importance here, we have made sure that an out-of-court statement was introduced for a '*legitimate*, nonhearsay purpose' before relying on the not-for-its-truth rationale to dismiss the application of the Confrontation Clause. *See Street*, 471 U.S., at 417, 105 S. Ct. 2078 (emphasis added). . . . Although [in Street] the Court noted that the confession was not hearsay 'under traditional rules of evidence,' *id.*, at 413, 105 S. Ct. 2078, the Court did not accept that nonhearsay label at face value. Instead, the Court thoroughly examined the use of the out-of-court confession and the efficacy of a limiting instruction before concluding that the Confrontation Clause was satisfied '[i]n this context.' *Id.*, at 417, 105 S. Ct. 2078.

*Williams v. Illinois*, 567 U.S. 50, 105–106 (2012) (Thomas, J., concurring). The majority in that case also affirmed that evidence which might otherwise violate the Confrontation Clause may be admitted with a limiting instruction if, *and only if*, there is a "distinctive and limited purpose" for which it is offered. *Williams*, 567 U.S. at 70 (quoting *Street*, 471 U.S. at 417).

It is, therefore, clearly established Federal law that statements accusing the defendant of the crime for which he is on trial cannot be admitted simply because the court instructs the jury not to take the evidence for the truth of the matter asserted. A reviewing court may not automatically assume that the jury will accept the limiting instruction. *Street*, 471 U.S. at 415. Instead, the court must inquire into whether there was a legitimate "distinctive and limited purpose" for which the evidence is offered, such that the jurors will be able to direct their attention to that purpose. *Id.* at 417.

With this clearly established law in mind, § 2254(d)(1)'s bar on habeas relief would be overcome if either of two circumstances was satisfied: first, if the state court acted contrary to clearly established federal law by applying a test that was inconsistent with the one set forth in *Crawford*, *Williams*, and *Street*, or, second, if the state court's conclusion that the statements in this particular case were admissible was unreasonable under the principles set forth in *Crawford*, *Williams*, and *Street*. *Cone*, 525 U.S. at 694. Either ground would be sufficient to permit this court to review the case de novo. I will consider each circumstance in turn.

### a. *Contrary to Clearly Established Federal Law.*

In this case, the statements at issue were made to officers outside any emergency context and for the purpose of assisting officers to apprehend an individual for subsequent prosecution. Both parties concede that the statements were testimonial. There is no evidence or argument that the informant was unavailable or that the informant had been subject to prior cross-examination. Therefore, under *Crawford*, the informant's statements would not be admissible to prove their truth—*i.e.*, that Reed stored his drugs on the roof. 541 U.S. at 59. They could only be admitted if the court was satisfied that they were being offered for another purpose. *Id.* at 59 n.9.

As described above, the test the court should have applied to determine whether the statements were admissible for another purpose was the test established by *Street* and *Williams*.

The court needed to inquire into whether there was a legitimate "distinctive and limited purpose" for which the evidence was offered. *Street*, 471 U.S. at 417. The Ohio Court failed to do so. Instead, it "[p]resum[ed] that the jury followed the court's instructions." *Reed*, 2020 WL 261697, at *9. By simply presuming that the limiting instruction was automatically sufficient, the court applied a different, more lenient standard. Because the court failed to identify the correct test under clearly established Federal law, and, instead, applied an inconsistent assumption, it acted contrary to clearly established Federal law. *Cone*, 525 U.S. at 694. As a result, the preconditions for habeas relief under § 2254(d)(1) are satisfied, and I would proceed to de novo review of Reed's Confrontation Clause claim. *Fulcher*, 444 F.3d at 799.

The majority argues here that, although the Ohio Court refused to apply the test from *Williams* and *Street*, that, alone is not enough to pass the relitigation bar. Maj. Op. at 12. To be sure, simple failure to set forth *Williams* and *Street* alone would not be enough. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As the majority notes, the Ohio courts could have simply denied Reed's Confrontation Clause claim with no reasoning at all. *Id.* at 98-99. But that a court may fail to state the test or state it with insufficient specificity provides no license for a court to state and explicitly rely on an incorrect rule of decision—one that conflicts with Supreme Court precedent. *Wilson v. Sellers*, 584 U.S. 132 (2018) (directing courts to rely "exclusively on the actual reasons given by the . . . state court" when determining whether the state court acted reasonably). Where the state court applies the incorrect rule of decision, the relitigation bar is surmounted. *Cone*, 535 U.S. at 694. Here, the correct standard was the one stated in *Williams* and *Street*, but the Ohio court applied a test that ran counter to that standard—i.e., one that allowed it to presume the jury would follow instructions even where there was no distinct and limited purpose.

### b. *Unreasonable Application of Clearly Established Federal Law.*

But even if the Ohio court had not acted contrary to clearly established Federal law, there is an additional ground showing that § 2254(d)(1) has been satisfied. The only purpose for the evidence that either the state trial court or the state appellate court indicated—and, indeed, the reason the majority chooses to accept—was "explain[ing] what the officer did during the investigation." *Reed*, 2020 WL 261697, at *9. I would review, therefore, whether this

justification reasonably satisfies the "distinct and limited purpose" test required by *Williams* and *Street*.

As a preliminary matter, although the Warden and the majority assert that habeas relief is unwarranted because there is no Supreme Court case directly and factually the same, perfect factual symmetry is not a requirement for this court's review of reasonableness. As the Court in *Panetti v. Quarterman* held:

> Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts "different from those of the case in which the principle was announced." The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner. These principles guide a reviewing court that is faced, as we are here, with a record that cannot, under any reasonable interpretation of the controlling legal standard, support a certain legal ruling.

551 U.S. 930, 953 (2007) (cleaned up). Therefore, the fact that *Williams* and *Street* involved factual situations different from the one before us, does not mean that the rules announced in *Williams* and *Street* are inapplicable or may be applied unreasonably. *Id.* Certainly, a court can act unreasonably if it encounters a set of facts that are identical or nearly identical to one the Supreme Court has already considered and then reaches the opposite result. *Cone*, 535 U.S. at 694. But that is just one way to act unreasonably.

A state court determination may be set aside "if, under clearly established Federal law, the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000). In *White v. Woodall*, the Supreme Court clarified *Ramdass*. 572 U.S. 415, 426-27 (2014). State courts are not unreasonable if they fail to extend the rationale of a case to create a new rule. *Id.* at 426. But, in the same breath, the Court explained that, where there is a legal rule that applies across an area of law, a state court is unreasonable in refusing to apply it even to a novel factual pattern. *Id.* at 427. "[S]tate courts must reasonably apply the rules 'squarely established' by this Court's holdings to the facts of each case." *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). And state courts must apply the correct, well established, fundamental legal principles to the facts of each case. *Id.*

Recently, the Supreme Court has been even more explicit. "General legal principles can constitute clearly established law for purposes of AEDPA so long as they are holdings of [the Supreme] Court." *Andrew v. White*, 145 S. Ct. 75, 81 (2025).[1] And when the Supreme Court "relies on a legal rule or principle to decide a case, that principle is a 'holding' of the Court for purposes of AEDPA." *Id.* Therefore, it matters not that *Williams* concerned the use of forensic expert reports to show the basis for an expert witness's opinion, or that the statement from *Williams* that is controlling in this case is, in the majority's words, a "general Confrontation Clause principle[]." Maj. Op. at 9. *Andrew* teaches that the generality of the principles in those cases does not give the state court or majority license to ignore them. What matters is that *Williams* and *Street* set forth legal principles that were the holdings of the Court and the Ohio court in Reed's case reached a decision that was an unreasonable application of those principles.

Several other circuits have recognized both that the *Williams* and *Street* principles are clearly established federal law and that an overbroad reading of what can be admitted as "background" or "course-of-investigation" evidence completely vitiates them, and is, therefore, unreasonable under the AEDPA standard. *Taylor v. Cain*, 545 F.3d 327, 335–36 (5th Cir. 2008) ("Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination . . . would eviscerate the constitutional right to confront and cross-examine one's accusers." (quoting *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir 2008))); *Jones v. Basinger*, 635 F.3d 1030, 1044 (7th Cir.

---

[1]The majority criticizes this dissent for relying upon *Andrew* because *Andrew* was not decided under the "unreasonableness" prong of AEDPA review. But the definition of "clearly established law" does not change based on which prong of the AEDPA analysis we look to. What *Andrew* establishes is that even a general principle can be clearly established federal law. 145 S. Ct. 81. It seems that the majority agrees on this point. Maj. Op. at 10. Thus, the general principles relied upon by the court in *Williams* are clearly established. And, contrary to the majority's claims, those principles must be applied to all confrontation clause cases that fall within the scope of those general principles even if the underlying factual circumstances are new. *White*, 572 U.S. at 427. Any decision in a confrontation clause case that is unreasonable under the *Williams* principles will, therefore, be unreasonable under clearly established federal law. The question in this case is merely whether allowing "background" or "course of investigation" to be a distinct and limited purpose justifying the admission of direct accusations is, in fact, an unreasonable application of those principles.

2011) (similar); *Orlando v. Nassau Cnty. Dist. Att'y's Off.*, 915 F.3d 113, 126 (2d Cir. 2019) (similar).[2]

And even the language found in some direct review cases clarifies that the state court's opinion in this case was not just wrong but unreasonable. As the Fifth Circuit noted in *United States v. Sharp*, allowing officers to testify to directly incriminating out of court statements simply because they "explain why the defendant became a suspect or how the officer was able to obtain a search warrant," would "permit an end run around the confrontation right." 6 F.4th 573, 582 (5th Cir. 2021). As the Third Circuit warned in *United States v. Sallins*, an overbroad allowance for background or "course of investigation" evidence is dangerous because "[t]he need for the evidence is slight, the likelihood of misuse great." 993 F.2d 344, 346 (3d Cir. 1993)

---

[2]The majority criticizes this dissent for looking to the analysis of other circuit opinions. Maj. Op. at 13. To be sure, circuit precedent is not clearly established federal law. *Fields*, 86 F.4th 218, 231. But circuit precedent discussing the reasonability of various applications of clearly established federal law—particularly precedent discussing unreasonability under AEDPA—is helpful in showing what is reasonable. *Stermer v. Warren*, 959 F.3d 704, 727 n.4 (6th Cir. 2020) ("This does not mean that precedents from this Court are not instructive, provided they are answering the right question: whether a state court decision reasonably applied existing Supreme Court case law."). The Ohio court did not act unreasonably because it misapplied clearly established federal law from this circuit or any other circuit. After all, there is only one source for "clearly established federal law:" Supreme Court opinions. *Fields v. Jordan*, 86 F.4th at 232. But the fact that every other circuit to consider the issue has held that state courts act, not just wrongly, but unreasonably under Supreme Court precedent when they apply overbroad "background" or "course-of-investigation" exceptions is persuasive evidence that overbroad "background" or "course-of-investigation" exceptions are, indeed, unreasonable.

Similarly, the majority attempts to differentiate each of these cases on their facts. Maj. Op. at 13–14. But this is not an issue where the facts underlying the out of circuit cases were particularly pertinent to the fundamental legal principle that applies across both those cases and this case. Clearly established federal law setting forth a binding general principle is clearly established federal law regardless of the facts to which it is applied. *White*, 572 U.S. at 427. And a new legal principle which vitiates that clearly established federal law is unreasonable regardless of the facts to which it is applied. *Crawford*, *Williams*, and *Street* set out Confrontation Clause rules that apply to all Confrontation Clause cases. *See e.g.*, *Williams*, 567 U.S. at 70 (applying the rule set out in *Street* to an entirely new factual circumstance because it applies regardless of the circumstances). The circuit court cases cited above all recognize that a state court principle that allows "background" or "course of investigation" justifications to permit a trial court to admit hearsay evidence of direct accusations against the defendant would vitiate those same rules and would, therefore, be unreasonable. *Crawford*, *Williams*, and *Street* apply with equal force to this case as they did to the cited circuit cases. The legal principle the Ohio state court applied in this case, moreover, is the same one those circuit courts found unreasonable. For instance, in *Orlando*, the state trial court had admitted a co-conspirator's confession—which the Supreme Court noted in *Bruton v. United States*, 391 U.S. 123 (1968) would violate the Confrontation Clause. 915 F.3d at 121. The Second Circuit immediately recognized that *Street* applied and that it would be unreasonable to presume the jury had followed a limiting instruction that the evidence was solely to be taken to "explain the detective's actions and their effect." *Id.* at 122. But, as *Williams* teaches, *Street* applies to situations beyond co-conspirator confessions; it applies to all Confrontation Clause scenarios. *Williams*, 567 U.S. at 70. There is no reason to suspect, therefore, that *Orlando*'s reasoning would be less applicable simply because new facts were involved.

(citation omitted). And, as we ourselves noted in *United States v. Cromer*, to allow officers to testify to the accusations of confidential informants while shielding those informants from cross examination would "make a mockery of the Confrontation Clause." 389 F.3d 662, 675 (6th Cir. 2004).[3]

Even operating from first principles, without circuit precedent as a guide, the unreasonable nature of the Ohio court's decision is clear. The Ohio court proceeded under the assumption that state courts may admit any evidence of a police investigation provided the State alleges that it is offering the testimony only to explain that investigation. Under that theory, almost every piece of relevant testimonial hearsay that a police officer overhears could, theoretically, explain why a police officer took an action, even if that action was simply arresting the defendant, closing an investigation, or pursuing a new lead; so, the theory would make almost every piece of relevant testimonial hearsay admissible.

Statements made to police officers that directly inculpate the defendant are, as *Crawford* explained, core types of evidence the Confrontation Clause seeks to exclude. 541 U.S. at 63–65. The Supreme Court's holding in *Crawford*, prohibiting the use of such core confrontation material would have no force if explaining the investigation becomes a catch-all for admitting testimonial statements. Nor would *Williams* and *Street*'s requirement that there be a "distinct and limited" purpose for the evidence have any force if just about any piece of relevant hearsay became admissible solely because an officer heard it and used it some way in his investigation.

Indeed, the justification under *Crawford*, *Williams*, and *Street* for allowing such a broad purpose for the evidence is particularly thin in this case. The officer's reason for conducting his search was not an element of the crime and had very low probative value. The State had already

---

[3]Once again, the majority criticizes this dissent for even looking at direct review cases. Maj. Op. at 13. It is true that a direct review case does not precisely answer the question of whether a particular legal rule is unreasonable in the AEDPA context. After all, circuit direct review cases do not and cannot set forth new clearly established federal law even where they only refine or sharpen Supreme Court precedent into closely associated new rules. *Marshall v. Rogers*, 569 U.S. 58 (2013). But that does not mean that our prior reasoning about what is unreasonable from outside the AEDPA context cannot at least provide a persuasive (although not binding) guide to what might be unreasonable in the AEDPA context. "Unreasonable" is not an AEDPA exclusive term of art. It is not consistent to hold, in one context, that a particular pattern of reasoning is not just wrong, but so wrong that it would "make a mockery" of a legal rule that all agree is clearly established federal law while, simultaneously, holding in another context that the same reasoning is perfectly reasonable under the same clearly established federal law.

explained the course of the police investigation, including why the house was searched and that the entire house was searched with its contents documented. This made further explanation of precisely why the Officers searched a particular part of the house even less probative. Any potential confusion that remained could have been explained simply by saying that the police had a tip about drugs on the roof rather than by setting out the full details of the informant's accusation of Reed. It is unlikely, therefore, that the jury would apply such accusatory evidence to an irrelevant "course of investigation" and not to the truth of the matter asserted—particularly after the State's comments in opening highlighting this testimony.

I agree with our sister circuits that it is unreasonable under *Crawford*, *Williams*, and *Street* for a state court to hold that the admission of an out-of-court accusation does not violate the Confrontation Clause simply because the prosecution asserted the evidence would explain the course of the investigation—something not at issue and already explained. I do not think this court should allow itself to become an outlier by authorizing such unreasonable conduct from the states. Because the state court's reasoning would effectively abrogate *Crawford*, *Williams*, and *Street* that court acted unreasonably under clearly established Federal law. Thus, under either prong—the "contrary to" or "unreasonable application of" clearly established law tests—the prerequisites to habeas relief found in § 2254(d)(1) are met, and de novo review of the admissibility of the statements is appropriate. *Fulcher*, 444 F.3d at 799.

2. De novo review.

In the de novo review context, we may consider our own precedent. This court has consistently held that out-of-court statements directly accusing the defendant of the crime for which he is on trial are not admissible merely as background. *See, e.g.*, *United States v. Pugh*, 405 F.3d 390, 401 (6th Cir. 2005); *Cromer*, 389 F.3d at 677; *United States v. Jones*, 205 F. App'x 327, 341–42 (6th Cir. 2006). This holds true even where the court provides limiting instructions purportedly constraining the jury to consider the evidence only for background purposes and not for the truth of the matter asserted. *United States v. Hearn*, 500 F.3d 479, 483–84 (6th Cir. 2007).

In *Hearn*, for instance, the defendant was discovered with large quantities of drugs during a traffic stop and charged with possession of a Schedule I narcotic. *Id.* at 480–81. At trial, the government asked two different officers why each had stopped Hearn. *Id.* at 481–482. The first officer testified that he had learned from a confidential informant "that Mr. Hearn had large amounts of ecstasy and marijuana [and] was going to be leaving to take the narcotics to a rave party." *Id.* at 481. The second testified that an informant stated, "Mr. Chad Hearn was in possession of large quantities of MDMA pills and marijuana that he intended to sell at a rave party." *Id.* at 482. The district court gave limiting instructions both times that "[t]his evidence is being admitted solely for the limited purpose of explaining why this officer did what he did next. So, you will not accept the testimony as being offered to prove what the confidential informant told him was true[.]" *Id.* at 481 n.1.

On appeal, we began by finding that the statements were clearly testimonial, and that Hearn had not been given the opportunity to cross examine the informant. *Id.* at 484. We then looked, as the Supreme Court has directed, to whether there was a reason for the admission of the statements beyond their inculpatory value. *Id.* We noted that any value the statements had in providing "background" or explanation for the police investigation could have been accomplished by a general statement about police concerns. *Id.* We "emphasize[d] that this [was] not a case where prosecutors, hoping to limit jury concerns about the reasons for police actions, took reasonable, or even minimal, steps to limit testimony about how officers stopped a suspect in response to statements from confidential informants." *Id.* at 483–84. As a result, we held that the testimony about the confidential informant was not appropriate background evidence and that, even with a limiting instruction, the accusations against Hearn would be used for the truth of the matter asserted and would go to the heart of the prosecution's case. *Id.* Hearn's Sixth Amendment rights had been violated. *Id.*; *see also Jones*, 205 F. App'x at 341–42 (finding that the limiting instructions did not cure the problem and that statements were "in fact offered for the truth of the matter asserted, rather than to serve 'the purpose of explaining how certain events came to pass or why the officers took the actions they did'" (quoting *Cromer*, 389 F.3d at 676)).

I would follow that precedent in this case. As discussed above, the confidential informant's statement that Reed kept his drugs on the roof was testimonial, and Reed was not given the opportunity to cross examine the informant. For the statements to have been admissible, there must have been a legitimate, distinct, and limited purpose for which the statements could be offered beyond their inculpatory value. *Williams*, 567 U.S. at 70. Otherwise, the informant's statements, which, as in *Hearn*, went directly to the heart of the prosecution's case, are likely to have been taken for the truth of the matter asserted. *Hearn*, 500 F.3d 483–84.

Yet there was no purpose. As in *Hearn*, any value that the statements might have had in explaining the police's investigation could have been realized with a general assertion regarding concerns about drugs on the roof rather than a direct accusation. *Id.* And, as in *Hearn*, there was no attempt to limit the extent of the accusatory statements. *Id.* Indeed, the State previewed its intent to offer the full accusation in its opening statement. Regardless of the limiting instruction given by the court, these statements bore the clear hallmarks of statements that will be used for their truth. Reed's rights under the Confrontation Clause were violated.

**B. Harmless Error Evaluation**

Because Reed's rights were violated and the Ohio court acted contrary to and unreasonably under clearly established federal law, Reed is entitled to habeas relief unless the error was harmless. Because the Ohio court opinion did not reach harmlessness, we are not bound by AEDPA in our harmlessness analysis and may simply apply the harmlessness standard employed for habeas proceedings before AEDPA. *Fry v. Pliler*, 551 U.S. 112, 120–21 (2007). We may only grant relief if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

In the context of a Confrontation Clause violation, courts apply the "*Van Arsdall* factors" to determine whether the error was harmless under *Brecht*. *Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009) (citing *Delaware v. Van Ardsall*, 475 U.S. 673, 684 (1986)). These factors include (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or

contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* I now turn to the application of each factor to this case to determine whether the error was harmless under *Brecht* (weighing in favor of the Warden) or harmful (weighing in favor of Reed).

> 1. The importance of the witness' testimony in the prosecution's case.

The first *Van Arsdall* factor weighs in favor of the defendant where the testimony was the most compelling evidence presented on a crucial point for the State. *Calvert v. Wilson*, 288 F.3d 823, 834-35 (6th Cir. 2002). This is true even where there is other evidence on that crucial point but the other evidence is circumstantial or consistent with other explanations, *id.*, or where the testimony reinforces and corroborates the other evidence in crucial ways, *Blackston v. Rapelje*, 780 F.3d 340, 360 (6th Cir. 2015). The fact that the State specifically previewed to the jury in its opening statement that the testimony would show that "the defendant hides his drugs outside in the gutters of his house" is evidence that the testimony was important to the State's case. *See Miller v. Genovese*, 994 F.3d 734, 745 (6th Cir. 2021) (citing the State's use of particular testimony in opening statements as evidence of the testimony's importance).

This testimony was important to the prosecution's case on Counts 2–5, which required the State to prove that Reed possessed the specific drugs on the roof. It is true, as the district court noted, that there was evidence tying Reed to the drugs without the informant's testimony. Reed does not even contest that the evidence was sufficient to show that he was involved in drug trafficking on Count 1. In the room where Reed's mail and possessions were found, there was a gun and a large amount of cash. There were two digital scales with drug residue in the house. The officers also testified that, when Reed discovered the roof would be searched, his demeanor shifted from "cocky and confident" to "concern[ed]."

On the other hand, the State could establish through its controlled buys that Reed possessed some drugs at some point, but not the specific drugs at issue and not even necessarily all of the same types of drugs or same amounts that were found on the roof. Unlike the firearms at issue in Counts 6-7, the drugs were not found in the same room as the items that could be directly linked to Reed. There was some question at trial concerning whether Reed even resided

at the Larchmont Drive address or whether he was simply there on March 8. There was evidence that several other people lived there or received mail there including Reed's mother, his son, his sister, his sister's children, and his girlfriend. Reed's girlfriend testified that Reed "came through" the house sometimes but did not own it. His mother was the lease holder. And, even if Reed did live there, it was undisputed that other individuals lived in the home too, including one whose name was on one of the digital scales with drug residue. There was no forensic evidence (e.g., fingerprints or DNA) tying Reed to the drugs.

In short, there was some circumstantial evidence that the drugs belonged to Reed. But that evidence was also consistent with the theory that Reed sold drugs but that the particular drugs on the roof belonged to another resident of the house. The only direct evidence linking Reed to these particular drugs was the informant's testimony about Reed keeping his drugs on the roof. That testimony was, therefore, important to the State's case. And the importance was reinforced by the State's decision to preview the evidence on opening and to specifically note that the drugs were found precisely where the informant said that Reed kept his drugs. *Miller*, 994 F.3d at 745. This harmfulness factor weighs in favor of Reed.

2. Whether the testimony was cumulative.

Evidence is cumulative where it adds little probative force to the other evidence in the case such that its contribution to the determination of truth is outweighed by its contribution to the length of the trial. *United States v. Love*, 254 F. App'x 511, 518 (6th Cir. 2007). But evidence is not cumulative merely because there is already evidence pointing to the element of the offense it supports. *Id.* at 518–19. Where the unconfronted statement is "similar, if not identical" to other evidence, it is not cumulative. *McCarley v. Kelly*, 801 F.3d 652, 666–67 (6th Cir. 2015). Where the other evidence on a particular point is more circumstantial or more attenuated than the evidence at issue, the evidence at issue is not cumulative. *Reiner v. Woods*, 955 F.3d 549, 558–59 (6th Cir. 2020). Thus, once again, the fact that all of the other evidence of Reed's possession of the drugs was circumstantial and required the jury to draw the inference that Reed and not another occupant of the house who also sold drugs was the possessor, means that direct testimony about Reed's possession was not cumulative. This harmfulness factor weighs in favor of Reed.

3.    The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points.

Cumulativeness and corroboration are two sides of the same coin.  *Miller*, 994 F.3d at 744.  Where there is circumstantial evidence consistent with the unconfronted testimony, but the out-of-court statement is the only direct evidence on a particular point, this factor weighs in favor of the defendant.  *Hargrave v. McKee*, 248 F. App'x 718, 728–29 (6th Cir. 2007).  As discussed above, there was circumstantial evidence consistent with and supportive of the informant's statement.  But there was no other direct evidence affirming that Reed had placed the drugs on the roof.

The Warden argues that "[t]he discovery of the drugs on Reed's roof corroborated the tipster's statement that he hid the drugs there."  But this misses the point.  The question the informant's tip answers is not whether there were drugs on the roof, something that no party contested.  It was whether Reed was the one who put the drugs there.  The fact that drugs were found on the roof does not confirm or contradict any assertion that a particular person (whether Reed or another resident of the house) put them there.  This harmfulness factor weighs in favor of Reed.

4.    The extent of cross examination otherwise permitted.

Where the defendant is afforded no opportunity to cross examine the declarant of the statement at issue, this factor weighs heavily in favor of the defendant.  *Reiner*, 955 F.3d at 560. The Warden argues that this factor can be satisfied through cross examination of the officer who relayed the statement.  In support, the Warden cites two cases, *England v. Hart*, 970 F.3d 698, 715 (6th Cir. 2020), and *Street*, 471 U.S. at 414.  *Street* did not consider harmlessness, and its reference to the ability to cross examine an officer had to do with assuaging doubts that the out-of-court statement had been correctly recounted, not with the efficacy of cross examining the recounting officer as a substitute for cross examining the declarant on the substance of the statement. *Id.*  *Street* does not apply here.

In *England*, this Circuits' entire analysis of this factor was:  "England provides no counter to the Warden's assertion that he could have cross-examined Detective Walker about the

affidavit. That he chose not to do so—instead focusing his defense on other elements of the case—does not mean he was deprived of the opportunity." 970 F.3d at 715. Our analysis in *England* does not assert that the fourth factor can be satisfied by cross examining the recounting witness; rather, it notes that England failed to provide a response. In contrast, we have squarely asserted that the relevant question for this factor is whether the declarant could be cross examined. *Reiner*, 955 F.3d at 560.

As in *Reiner*, Reed had no opportunity to cross examine the confidential informant at all. This harmfulness factor weighs heavily in favor of Reed.

> 5. <u>The overall strength of the prosecution's case.</u>

The question here is not merely whether there was enough evidence to legally support a conviction without the contested evidence. *Reiner*, 955 F.3d at 561–62. The question presented by the fifth factor is whether the prosecution's case would have been materially weaker without the contested evidence. *Id.* Reed argues that removal of the testimony about the informant's tip would raise significant doubts about the legal sufficiency of the remaining evidence under Ohio law. In *State v. Haynes*, 267 N.E.2d 787 (Ohio 1971), drugs were found in premises rented by the defendant but resided in by the defendant, his girlfriend, and three other people. The defendant had not been to the home in three weeks. *Id.* at 791. The Ohio court warned:

> The mere fact that one is the owner or lessee of premises upon which narcotics are found—where such premises are also regularly occupied by others as co-tenants and the narcotics are found in an area ordinarily accessible [sic] to all tenants—is not, without further evidence, sufficient to establish possession in the owner or lessee.
>
> When narcotics are discovered in the general living area of jointly occupied premises, one can only speculate as to which of the joint occupiers have possession of the narcotics. In other words, no inference of guilt in relation to any specific tenant may be drawn from the mere fact of the presence of narcotics on the premises.

*Id.* The Ohio court, therefore, found the evidence that Haynes had leased the premises insufficient to support a conviction. *Id.* Reed notes that in his case, he had not even leased the home, and, as in *Haynes*, he was maintaining a separate residence. Reed's brief presence in the

home is not enough to identify him, as opposed to one of the other residents as the owner of the drugs.

Here, however, there was evidence tying Reed to the drugs beyond his mere presence in the home. There was evidence that he had been dealing drugs out of that home earlier that day, suggesting that the drugs in the home may have been his supply for selling. There were large amounts of cash and guns in the bedroom where his mail was found and, if the officer's evaluation of his demeanor is to be believed, the police's decision to search the house was concerning to him. This evidence is circumstantial, but it is more than mere speculation based on residence. Circumstantial evidence alone can support a conviction. *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

*Reiner*, however, teaches that it is not dispositive that the evidence can support a conviction. 955 F.3d at 561–62. Where the remaining evidence on a particular point is purely circumstantial, an out-of-court statement accusing the defendant materially affects the case. *McCarley*, 801 F.3d at 667 ("Had the jury not heard and considered D.P.'s statements identifying McCarley as the perpetrator, the State's case would have been almost entirely circumstantial. . . . This factor therefore weighs in favor of McCarley."); *Hargrave*, 248 F. App'x at 729 ("Aside from Warner's testimony, the prosecution's case was based on second-hand accounts and scattered pieces of circumstantial evidence."). The State's case would have been materially weaker without the confidential informant's tip that Reed hid his drugs in the gutter. This harmfulness factor weighs in favor of Reed.

6. The weight of the factors.

Each factor weighs in favor of the conclusion that the error was harmful to Reed. "This creates, at the very least, 'grave doubt' as to whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Reiner*, 955 F.3d at 562 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). The error was not harmless, even under the habeas standard, and habeas relief is warranted. *O'Neal*, 513 U.S. at 435.

## III.  CONCLUSION

I would hold that the Ohio court's opinion in Reed's case was both contrary to and unreasonable under clearly established federal law.  Reed's constitutional rights were violated, and the error was not harmless.  I would reverse the district court's denial of habeas relief on Reed's Confrontation Clause claim and remand with instructions to grant the petition and to issue the writ of habeas corpus.  I therefore respectfully dissent.