NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0145n.06

Case No. 25-1287

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Mar 18, 2026
KELLY L. STEPHENS, Clerk

JORDAN CHRISTOPHER DANSKI,

    Petitioner - Appellant,

v.

GARY MINIARD, Warden,

    Respondent - Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: DAVIS, RITZ, and HERMANDORFER, Circuit Judges.

**RITZ, Circuit Judge.** A Michigan jury convicted Jordan Christopher Danski of crimes relating to a home invasion. The district court denied Danski's petition for a writ of habeas corpus. We affirm.

**BACKGROUND**

**I. Facts**

On June 24, 2015, someone broke into Amy Armstrong's home in Sterling Heights, Michigan, as Armstrong and her daughter slept. The next morning, Armstrong noticed that the back door was unlocked, despite her locking it the night before; her purse, car keys, and phone were missing from the kitchen counter; the garbage can by the back door was missing; and her white Ford Focus, which contained her knife set, work bag, paperwork, gym bag, clothes, and shoes, was missing from her driveway. That same morning, Armstrong's paperwork and knives were found abandoned in the neighboring town of Clinton Township, Michigan. At the time,

Danski lived with some housemates in Clinton Township, approximately half a mile from Armstrong's home.

A couple weeks later, on July 5, 2015, someone crashed Armstrong's Ford Focus while driving it in a Sterling Heights neighborhood. Joseph Robincheck saw the crash from his bedroom window and called the police. When Robincheck approached the scene, he noted that the car's airbags were deployed, its front end was damaged, and several people were walking away from the car. Robincheck also saw a man sitting behind the wheel attempting to start the car. The man behind the wheel told Robincheck that the car did not belong to him, he had not been driving the car, and he should not be at the scene. The man then left the scene on foot. Robincheck later identified the man behind the wheel as Danski. The police also matched Danski's fingerprints to those found on items in the car.

Twelve days after recovering Armstrong's Ford Focus, police interviewed Danski. During the interview, but before police had mentioned the home invasion, Danski said, "do you think I'm stupid, I'm not admitting to a home invasion first." RE 6-13, Trial Tr., PageID 1245-46.

Jennah Apolzan, Danski's housemate and family friend, told police she saw Jeffrey Moore, another housemate, driving the Ford Focus. Later, Danski called Apolzan and asked her to get rid of some clothes for him, and she complied.

On September 21, 2015, the police arrested Danski and seized his phone. The police determined that Danski's phone had pinged a cell tower near Armstrong's home on the night of the invasion at 2:50 a.m., suggesting he was in the area at that time. Between 2:50 a.m. and 3:05 a.m. that night, Danski's phone also pinged cell towers in Clinton Township near where Armstrong's paperwork and knives were found. Notably, these towers were all located within

approximately three miles of both Armstrong's residence in Sterling Heights and Danski's residence in Clinton Township.

## II.    Procedural history

On January 5, 2016, the state charged Danski with first-degree home invasion under Mich. Comp. Laws § 750.110a(2) and unlawfully driving away an automobile (UDAA) under Mich. Comp. Laws § 750.413.  For the UDAA charge, the charging documents provided notice of both principal and aiding-and-abetting theories of liability:

> [The defendant] did willfully and without authority, take possession of and drive or take away, or did assist in, or was a party to such taking possession, driving or taking away, of a motor vehicle, to-wit: A 2011 FORD FOCUS belonging to another, to-wit: AMY ARMSTRONG; contrary to MCL 750.413.

Felony Warrant, *People v. Danski*, No. 2016-000325, 2017 WL 11317608 (Mich. Cir. Ct. Feb. 9, 2017); *see also People v. Danski*, No. 340762, 2019 WL 1924942, at *3 (Mich. Ct. App. Apr. 30, 2019).

At trial, Danski maintained that he neither broke into Armstrong's home nor stole her car. Instead, Danski suggested that the culprit was someone else, possibly his housemate Moore, who had died before Danski's trial.

During deliberations, the jury submitted several questions to the court.  One of the questions asked in relation to the UDAA charge, "[c]an 'drove or took it away' be understood as the driver or a passenger?" RE 6-15, Trial Tr., PageID 1511-12.  In response, the trial court decided *sua sponte* to give the jury additional instructions explaining what is required for an aiding-and-abetting theory of liability and clarifying that mere presence cannot support that theory. Danski objected, arguing that the state never argued aiding-and-abetting at trial, but the trial court overruled Danski's objection and gave the instructions.  The jury convicted Danski of both charges, and the trial court sentenced Danski to 13 to 20 years in prison.

In October 2017, Danski appealed to the Michigan Court of Appeals, arguing several claims, including the claims at issue here and an ineffective-assistance-of-counsel claim. The court remanded for a hearing on Danski's ineffective-assistance claim and allowed Danski to file a motion for a new trial. Following a hearing, the Michigan trial court denied Danski's motion for a new trial. On subsequent appeal in April 2019, the Michigan Court of Appeals affirmed Danski's convictions on the merits. And in October 2019, the Michigan Supreme Court denied Danski's application for leave to appeal these claims.

On October 12, 2021, Danski filed a federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied Danski's petition in March 2025 but granted a certificate of appealability on Danski's claims that: (1) the state trial court's supplemental jury instructions violated Danski's constitutional rights, and (2) the state presented insufficient evidence to support Danski's convictions.

**ANALYSIS**

**I.       Standard of review**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs in cases where, like here, "a state court denies a prisoner's claim on the merits." *Reed v. May*, 134 F.4th 455, 459 (6th Cir.), *cert. denied sub nom.*, *Reed v. Fredrick*, 146 S. Ct. 226 (2025); *see also* 28 U.S.C. § 2254(d). Under AEDPA's "re-litigation bar," *Reed*, 134 F.4th at 459, "federal courts may not grant a writ of habeas corpus unless the state court's decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court' or (2) 'was based on an unreasonable determination of the facts,'" *Mack v. Bradshaw*, 88 F.4th 1147, 1154 (6th Cir. 2023) (quoting 28 U.S.C. § 2254(d)).

Within the first prong of AEDPA's relitigation bar, the "contrary to and unreasonable application clauses of 28 U.S.C. § 2254(d)(1) have independent meaning." *Smith v. Nagy*, 962 F.3d 192, 198 (6th Cir. 2020) (citation modified). A state court's decision runs "contrary to clearly established federal law" only where it "contradicts governing Supreme Court law; or [] confronts a set of facts materially indistinguishable from a decision of the Supreme Court and yet arrives at a different result." *Id.* at 198-99 (citation modified). A state court decision is an "unreasonable application" of clearly established federal law if it "unreasonably applies" a correct legal rule "to the facts of the instant case," or it "unreasonably extends an established legal principle to a new context where it should not apply." *Id.* at 199 (citation modified).

Under the second prong of AEDPA's relitigation bar, a state court's factual findings are unreasonable only where the prisoner presents "clear and convincing evidence" that "rebut[s] the state court's factual findings." *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (citation modified). That "a federal court would make a different [factual] finding in the first instance" is not sufficient to warrant relief. *Mack*, 88 F.4th at 1154 (citing *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

When a prisoner raises a federal habeas claim against a state-court conviction, federal courts apply the AEDPA framework to the "last reasoned state court decision that adjudicated [the] claim on the merits." *Mack*, 88 F.4th at 1154. Here, the applicable state court decision is the 2019 Michigan Court of Appeals decision. *See Danski*, 2019 WL 1924942, at *1. We review the district court's legal conclusions de novo and its factual findings for clear error. *Smith*, 962 F.3d at 198.

## II.     Danski's jury-instruction claim fails.

Danski first argues that the trial court's *sua sponte* aiding-and-abetting jury instruction violated his constitutional rights to due process and a fair jury trial because Danski lacked proper notice of an aiding-and-abetting theory of liability. But Danski's argument is unavailing.

The Michigan Court of Appeals found that the "evidence presented in this case established a factual basis to support the trial court's supplementation of its instructions [so] the jury could rationally conclude from the evidence that [Danski] committed the UDAA offense *or assisted another person* in" committing it. *Danski*, 2019 WL 1924942, at *4 (emphasis added). The court pointed out specific evidence from the record to support this finding, including: Apolzan's identification of Moore, Danski's "roommate and close friend[,] as having driven the stolen vehicle"; the cell phone location data; Danski's fingerprints on items in the vehicle; and Robincheck's identification of Danski behind the wheel of the vehicle. *Id.* The court also noted that Danski was charged with both aiding-and-abetting and principal liability. *See id.*

The decision of the Michigan Court of Appeals does not run contrary to or unreasonably apply clearly established federal law. In *Estelle v McGuire*, the Supreme Court explained that an erroneous jury instruction merits habeas relief only where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates [the constitutional right to] due process." 502 U.S. 62, 72-73 (1991) (citation modified). This is a "very narrow[]" category of error. *Id.* at 73. Indeed, a mere "error in jury instructions alone is not a basis for habeas relief" because "[t]o warrant habeas relief, jury instructions must[,] . . . 'taken as a whole, [be] so infirm that they rendered the entire trial fundamentally unfair.'" *Adams v. Wainwright*, No. 20-3646, 2022 WL 808036, at *5 (6th Cir. Mar. 17, 2022) (quoting *Scott v. Mitchell*, 209 F.3d 854, 875, 882 (6th Cir. 2000)).

Danski cannot meet this high threshold merely because the prosecution did not focus on the aiding-and-abetting theory of liability at trial. We have repeatedly found that an aiding-and-abetting instruction is not improper where there was evidence to support it or where the defendant was on notice of the aiding-and-abetting theory. *See, e.g.*, *Berry v. Capello*, 576 F.

App'x 579, 589-90 (6th Cir. 2014) (concluding "the prosecution's evidence was sufficient to sustain [the defendant's] convictions" under the aiding-and-abetting instruction); *Bennett v. Rewerts*, No. 18-1730, 2018 WL 8732861, at *2 (6th Cir. Oct. 24, 2018) (same); *Hill v. Perini*, 788 F.2d 406, 408 (6th Cir. 1986) (construing Ohio law to allow "a jury instruction regarding complicity" when defendant had "legal notice of the possibility"). In Michigan, aiding-and-abetting liability is a theory of conviction, not a separate substantive offense. *See* Mich. Comp. Laws § 767.39; *People v. Robinson*, 715 N.W.2d 44, 47 (Mich. 2006). And here, as pointed out by the Michigan Court of Appeals, there was notice of that theory in the charging documents as well as evidence to support it at trial. *See Danski*, 2019 WL 1924942, at *2-4. Moreover, we have held that an "aiding-and-abetting [jury] instruction . . . was fair game" particularly where, like here, "one of [the defendant's] defenses was that someone else [committed the offense.]" *Rashad v. Lafler*, 675 F.3d 564, 569-70 (6th Cir. 2012).

Danski seems to suggest that the government's focus on a principal theory of liability at trial annulled the aiding-and-abetting theory of liability provided in the charging documents. We disagree. In fact, the Supreme Court has noted that there is "no case of ours holding" that "a prosecutor's focus on one theory of liability at trial . . . render[s] earlier notice of another theory of liability inadequate." *Lopez v. Smith*, 574 U.S. 1, 5-7 (2014) (per curiam). Danski received notice of the aiding-and-abetting theory, so relief here is unfounded. Danski's additional contentions—for example, that the at-issue jury instructions occurred after closing arguments and that our court's precedent supports his request for relief—also do not overcome the absence of contrary federal law. *Cf. Reed*, 134 F.4th at 464 (reiterating that habeas relief is inappropriate when there is no "Supreme Court case on point" because "Sixth Circuit precedent isn't enough to surpass AEDPA's relitigation bar").

In sum, the jury instruction was not "so egregious that it rendered [the] entire trial fundamentally unfair." *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1078 (6th Cir. 2015) (citation modified). Thus, the district court properly denied Danski's jury-instruction claim.

## III. Danski's sufficiency-of-the-evidence claim also fails.

Danski also argues that habeas relief is warranted because the evidence presented at trial was insufficient to support his conviction. We disagree.

In habeas claims where the petitioner raises a sufficiency-of-the-evidence challenge, we apply "a double layer of deference," *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009), "one to the jury verdict, and one to the state appellate court," *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). Under the first layer of deference, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under the second layer of deference, we "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). And we generally only find a state court's sufficiency determination unreasonable if it inappropriately applies *Jackson*, which occurs when "there is no way to read the record" to support the conviction. *Tanner*, 867 F.3d at 674; *see also Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

Here, the Michigan Court of Appeals reasonably found that the "direct and circumstantial evidence enabled the jury to draw inferences and conclude beyond a reasonable doubt that" Danski "committed the charged offenses." *Danski*, 2019 WL 1924942, at *5. In support, the court pointed to cell phone evidence putting Danski near the scene of the crime around the time of the crime; similar evidence putting Danski near the location of the recovered stolen property; evidence of

Danski's fingerprints inside the stolen car; eyewitness identification of Danski behind the wheel of the stolen car; and Danski's own statement showing knowledge of the home invasion. *Id.*

Although this evidence may have been largely circumstantial, it is not so deficient as to make the decision of the Michigan Court of Appeals unreasonable. In a similar case, we denied a certificate of appealability to a defendant who sought habeas relief for insufficient evidence after being convicted in Michigan of first-degree home invasion and larceny. *Mott v. Schreiber*, No. 23-2012, 2024 WL 4119127, at *4 (6th Cir. June 4, 2024), *cert. denied*, 145 S. Ct. 453 (2024), *reh'g denied*, 145 S. Ct. 1323 (2025). Like here, the evidence in *Mott* revolved around a victim's observations of disturbed items, the defendant's possession of stolen property, and a witness identifying the defendant with the stolen property. *Id.* And in *Mott*, we found "that it was not unreasonable for the state court to conclude that this evidence," even absent direct evidence that the defendant had been "inside the residence," "supports a rational inference" that the defendant committed the crime. *Id.* We reach a similar conclusion here.

Danski notes that the state provided no direct evidence that Danski "had ever been in [Armstrong's] home," and only circumstantial evidence that Danski was "present at the time and location of the home invasion and driving away [with Armstrong's car.]" CA6 R. 10, Appellant Br., at 32, 34. But under our caselaw, affirming a conviction on circumstantial evidence is not objectively unreasonable and thus is not grounds for habeas relief. *See United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020); *Levack v. Brown*, No. 21-1336, 2022 WL 2187895, at *4 (6th Cir. June 17, 2022). Indeed, circumstantial evidence "need *not* remove every reasonable hypothesis except that of guilt." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (citation modified).

Even if we may have considered "a different finding in the first instance," that is not the standard for habeas relief. *Mack*, 88 F.4th at 1154. The decision of the Michigan Court of Appeals was not objectively unreasonable.

## CONCLUSION

For the foregoing reasons, we affirm the denial of Danski's habeas petition.